451 So.2d 35 (1984)
STATE of Louisiana, Appellee,
v.
Gerald Dewayne JONES a/k/a Jerald Dewayne Jones, Appellant.
No. 15911-KA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 1984.
Rehearing Denied May 25, 1984.
Writ Denied September 14, 1984.
*37 Caddo Parish Indigent Defender Office by Richard C. Goorley, and Donald R. Minor, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., by Robert W. Gillespie, Jr., Asst. Dist. Atty., Shreveport, for appellee.
Before PRICE, JASPER E. JONES and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
The defendant, Gerald Dewayne Jones, was found guilty by a jury of second degree murder and armed robbery. Defendant was sentenced to serve life imprisonment at hard labor on the second degree murder conviction, plus a consecutive prison term of 60 years at hard labor on the armed robbery conviction.
Factual Context
On the afternoon of November 24, 1980, Paul DeBroeck returned from work to his rural Caddo Parish mobile home and discovered the body of his wife, Mary De-Broeck, lying face up on the living room floor beneath a sheet. She had died from two gunshot wounds to her chest. Mrs. DeBroeck's car, a 1980 yellow AMC Concord with a temporary license plate, and her credit cards were missing.
In the ensuing investigation the Caddo Parish Sheriff's Department was informed by a nearby resident, Earl Eastman, that his .22 caliber pistol was missing from his home and that the defendant had slept at his home the night before the murder. The authorities also learned that the defendant, who had been living in the vicinity of the crime for about two months, left the state bound for Oneonta, Alabama. On the night of the 24th of November a nationwide alert was broadcast for Mrs. De-Broeck's yellow AMC Concord. On the 25th the sheriff's department was notified by the Tarrant City, Alabama police that a vehicle fitting the description of Mrs. De-Broeck's car had been seen in that city and the driver had asked directions to Oneonta, Alabama. Based on this information a warrant was issued for defendant's arrest on the charge of felony theft.
On April 24, 1981, the defendant was arrested in Garden City, Georgia, at the scene of a burglary. After discovery of the pending charges in Louisiana, defendant was transferred to the Chatham County courthouse in Savannah, Georgia, for extradition. At that time Caddo Parish *38 authorities issued a second arrest warrant charging defendant with first degree murder.
Caddo Parish Sheriff Deputy J.W. Jones arrived in Savannah on April 26, 1981, in order to return the defendant to this state. Deputy Jones testified that after advising defendant of his Miranda rights, defendant informed him that he had been in the home of Paul and Mary DeBroeck on November 24, 1980. The defendant stated that he passed the DeBroeck's mobile home that morning and saw the door open and walked up to the home with the intention of using the telephone to call the police to turn himself in as being AWOL from the army. As he looked in the front door he saw two feet sticking out from underneath a sheet in the living room. The defendant started to use the telephone to call the police, but realizing he was AWOL, he did not and panicked. Defendant then admitted taking the car parked in the carport. He claimed that the credit cards were in the glove compartment of the car. However, he denied shooting Mrs. DeBroeck.
On April 27, 1981 defendant was transported back to Caddo Parish for prosecution in connection with the death of Mary DeBroeck.
At trial the undisputed evidence clearly established that Mrs. DeBroeck died from two gunshot wounds. The bullets recovered at the scene of the crime were fired from a .22 caliber pistol. Other evidence tending to implicate defendant as the murderer was a statement made by him to Wilson Wade Shelley, a friend in Georgia. Shelley testified defendant told him he shot someone twice in Louisiana and threw the gun into a river. At trial defendant admitted the theft of the DeBroeck car and the unauthorized use of the credit cards, but denied killing Mrs. DeBroeck.
This appeal raises issues as to the admissibility of the statements made by the defendant upon arrest and the sufficiency of the evidence to convict.
Assignment of Error No. 1
By this assignment, defendant contends that his statement to Caddo Parish Sheriff Deputy J.W. Jones should have been suppressed. In essence, defendant asserts that he informed three people that he desired counsel prior to making the statement.
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court made clear that when an accused invokes his right under Miranda to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation, even if he has been advised of his rights. An accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversation with the police.
The Louisiana Supreme Court reached a similar conclusion prior to the Edwards v. Arizona decision in the case of State v. Thucos, 390 So.2d 1281 (La.1980). In that case, the Louisiana Supreme Court held that after an accused invokes his right to have counsel present during custodial interrogation, the police failed in their duty to scrupulously honor his right when they initiated further questioning shortly after his request for counsel.
The general rule is that, in a trial on a motion to suppress, the burden of proof is on the defendant to prove the grounds of his motion. La.C.Cr.P. Art. 703(D). One exception to the rule is that the state has the burden of proving beyond a reasonable doubt the voluntariness of a confession which the defendant has moved to suppress as evidence at the trial on the merits. In reviewing the trial judge's ruling as to the admissibility of the confession, his conclusions on credibility are entitled to the respect due those made by one who saw the witnesses and heard them testify. State v. Rodrigue, 409 So.2d 556 (La.1982); State v. Bouffanie, 364 So.2d 971 (La.1978).
*39 The determination to be made on review of the motion to suppress hearing is whether the defendant carried his burden of proof for the grounds of his motion under Article 703(D) and whether the state has carried its burden of proving beyond a reasonable doubt the voluntariness of the statement which defendant has moved to suppress. In addition, this court is required to give great weight to the trial court's conclusions on credibility of witnesses. Applying these precepts to the facts found by the trial court, we conclude that any inculpatory statements made by the defendant to the Caddo Parish Sheriff Deputy while in Georgia occurred after the defendant had been advised of his constitutional rights and had voluntarily, knowingly, and intelligently waived them in compliance with Miranda.
The review of the record indicates that the only evidence that defendant had requested counsel prior to making a statement was the testimony of the defendant himself. Defendant states that the first person whom he told that he wanted an attorney was the "deputy of the judge" at the Chatham County, Georgia, jail. Defendant asserts that his next request occurred when he went to Chatham County Judge Brannon's chambers concerning his extradition back to Louisiana. Defendant next asserts that he informed Caddo Parish Deputy J.W. Jones that he wanted an attorney and that Deputy Jones had told him that he would have to wait until he got back to Louisiana. The record indicates that defendant could not identify the deputy of the judge. Additionally, Judge Brannon of Chatham County, Georgia, testified at the motion to suppress hearing and denied the defendant's assertions. Deputy J.W. Jones also denied that defendant requested counsel prior to returning to Louisiana.
The State called five witnesses on its behalf, all of whom contradicted the testimony of defendant. The record contains ample support for the trial court's finding that defendant had not requested counsel prior to making his statement and that his statement was given freely and voluntarily. Additionally, the defendant signed a waiver of his Miranda rights form prior to his statement. We therefore find this assignment of error to be without merit.
Assignment of Error No. 2
By this assignment, defendant asserts that the trial court erred in not granting a mistrial when a witness for the prosecution testified concerning the defendant's absence from the army without leave. However, defendant has not briefed this assignment of error and it will, therefore, be considered abandoned. State v. Domingue, 298 So.2d 723 (La.1974); State v. Williams, 338 So.2d 672 (La.1976).
Assignment of Error No. 3
By this assignment, defendant asserts that the evidence did not support a verdict of guilty beyond a reasonable doubt.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the U.S. Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
In cases involving circumstantial evidence, the defendant is entitled under the provisions of LSA-R.S. 15:438 to have the jurors instructed that they must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Sutton, 436 So.2d 471 (La.1983).
Thus, the defendant has a statutory right to an instruction that the jurors must conclude that no reasonable hypothesis of innocence exists, as well as a constitutional (and statutory) right to appellate review of the sufficiency of evidence. An appellate court reviewing the sufficiency of evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational jury *40 to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. As stated by the Louisiana Supreme Court in State v. Chism, 436 So.2d 464 (La.1983) the circumstantial evidence rule of LSA-R.S. 15:438 may not establish a stricter standard of review than the more general reasonable juror reasonable doubt formula, but it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for implementation in cases which hinge on the evaluation of circumstantial evidence. In sum, the Jackson standard is a constitutional standard gleaned from the due process clause of the 14th Amendment. R.S. 15:438 is a statutory evidentiary standardnot a constitutional standardand as such, forms the heart of the inquiry in affecting the sufficiency of the evidence under the Jackson standard of appellate review. A single standard for appellate review, comporting with the sufficiency standard established in Jackson v. Virginia, is all that is constitutionally required. State v. Chism, supra.
Defendant asserts in brief that there is no direct evidence of the essential elements of the crime charged. The state asserts that the testimony of Wilson Wade Shelley who was arrested along with the defendant in Garden City, Georgia, offered direct proof of the crime charged. According to Shelley, defendant told him that he had shot somebody in Louisiana and that he had shot the person twice with a pistol which he had thrown in a river. The state asserts that this statement made by the defendant is, in fact, a "confession". Defendant asserts that the statement constitutes an "admission".
The term "admission" is applied to those matters of fact which do not involve criminal intent; the term "confession" is applied only to an admission of guilt, not to an acknowledgment of facts merely tending to establish guilt. LSA-R.S. 15:449. There is a broad distinction between the mere admission of inculpatory facts and a confession of guilt. Where a person only admits certain facts from which the jury may or may not infer guilt, there is no confession. An admission is circumstantial evidence for it is merely an acknowledgment of facts from which an inference of guilt can be drawn. A confession is direct evidence for it is an acknowledgment of guilt for which no inference need be drawn. McCormick on Evidence, § 185 (2d Ed.1972); Wigmore, Law of Evidence, § 25 (3rd Ed.1940).
Applying the jurisprudence to the testimony of Shelley indicates that the statement made by defendant to Shelley constituted "admissions". The statements made by defendant to Shelley did not involve intent, they merely stated matters of fact which tended to establish guilt. Defendant did not state the victim's name, the purpose of the shooting, where the shooting occurred, or any other event relating to the shooting. Additionally, since the statement made by defendant constituted an admission, it is circumstantial evidence of the crime charged.
A review of the record evidence indicates that there was no direct evidence establishing the defendant's guilt. However, we find there to be ample circumstantial evidence from which a rational jury could find the defendant guilty of the essential elements of the crime charged.
First, the defendant confessed to deputy J.W. Jones that he had in fact been at the DeBroeck residence on the morning of November 24, 1980 and had taken the De-Broeck car and credit cards. Other evidence tending to establish that defendant was at the scene was a cigarette butt found in an ashtray in the DeBroeck home. It was established at trial that the person who smoked that cigarette had a blood type "A" and was a "secreter". It was also established that the victim smoked a different brand of cigarette and also had blood type "O". Blood samples taken from the defendant indicated that defendant has blood type "A" and is a "secreter". Pat Wojakiewicz, of the Northwest Louisiana Criminalistics Laboratory, testified that a "secreter" is a person whose blood type can be found in the saliva or seminal fluid. *41 The expert also indicated that approximately 80% in blood group "A" are going to be secreters. However, people who have blood group "A" constitute approximately 32% of the people in North Louisiana. This clearly establishes strong circumstantial evidence that defendant was in fact in the DeBroeck home.
Although the defendant denied shooting Mrs. DeBroeck, the admission made by defendant to Wilson Wade Shelley infers that the person he shot in Louisiana was the victim in this case. Although the .22 caliber murder weapon was never recovered, defendant had access to the .22 caliber pistol belonging to Earl Eastman, at whose house he slept the night before the murder. Coincidentally, Eastman discovered his pistol missing on the afternoon of November 24th.
After reviewing this evidence in the Jackson v. Virginia constitutional due process standard, we find that the circumstantial evidence in this case provided sufficient evidence from which a rational fact finder could find the defendant guilty of the essential elements of the crime charged. Even if this court were to apply the R.S. 15:438 circumstantial evidence rule, there appears to be no reasonable hypothesis of innocence. Therefore, we find this assignment of error to be without merit.
Decree
For the reasons stated, the convictions and sentences are affirmed.