EDWARDS, Judge.
John A. Malveaux, Jr., was convicted after trial by jury for the first degree murder of Blanche Faircloth, a violation of LSA-R.S. 14:30. The jury recommended that Malveaux be sentenced to life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence. The trial court sentenced the defendant accordingly. Malveaux appealed, urging seven assignments of error and briefing two. Assignments of error not briefed on appeal are considered abandoned. Uniform Rules — Courts of Appeal, Rule 2-12.4.
FACTS
On July 5, 1984, Blanche Faircloth was brutally murdered in her Slidell home. The intruder entered through an unused door which led into the house from the garage. The door had been blocked by several pieces of large furniture and the hallway to which it led had been used as a storage area. Investigation after the murder revealed that the furniture had been moved to clear a path which allowed access to the house through a narrow opening.
The victim’s daughter, Nancy Blackwell, telephoned her mother the night of the murder. During their conversation, Mrs. Faircloth began screaming. Her daughter heard her say, “Someone is coming in the back door. Nancy, its John. John, John, what are you doing in my house?” Mrs. Blackwell heard a male voice answer, “Now, Miss Faircloth” and then her mother screamed again. Mrs. Blackwell ran to get dressed and her husband immediately called the police.
The victim’s battered, choked, and sexually molested body was discovered in her backyard shortly after this telephone conversation. There were signs of a struggle inside the house near the telephone and a trail of blood led from the house to where the victim's body was found, approximately one hundred feet from the house. An autopsy revealed massive injuries to the victim’s body. Three possible causes of death were established; any one of the three would have been sufficient to cause death. The order in which the wounds were inflicted could not be determined.[1]
Defendant had been employed to do routine yard work by the victim and had *303 worked for her on a regular basis for several years. The last date on which he had worked at her house was July 3, 1984, two days before the murder. On that date, an assistant, Ulysses “Batman” Batiste, saw him twist the knob to the garage door. Defendant was apprehended in the parking lot of a lounge located approximately 150 yards from the victim’s house. Detective Edward Baroni of the St. Tammany Parish Sheriff’s office testified that he questioned defendant because his car was parked near the victim’s residence. The defendant gave a voluntary statement which contained several inconsistencies and inaccurate information. A search of the defendant’s home was conducted with the consent of his wife. In the washing machine, the police found a pair of defendant’s blue jeans which contained visible traces of blood. Defendant was charged with first degree murder.
SUFFICIENCY OF THE EVIDENCE
In this assignment of error, defendant contends that the evidence is insufficient to support the verdict. He claims that the state’s case was based entirely on circumstantial evidence which did not exclude every reasonable hypothesis of innocence.
To commit first degree murder, the offender must have a specific intent to kill or to inflict great bodily harm and specific aggravating circumstances must be present. LSA-R.S. 14:80. Defendant was charged with the specific intent murder which occurred during the perpetration of an aggravated burglary.
In determining whether the evidence is sufficient to support a conviction, Louisiana appellate courts follow the due process standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To uphold a conviction, an appellate court must find that the evidence, when viewed in a light most favorable to the prosecution, was sufficient to convince a rational fact finder that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Martin, 458 So.2d 454, 462 (La.1984); State v. Captville, 448 So.2d 676, 678 (La.1984).
According to LSA-R.S. 15:438, when circumstantial evidence is involved the rule is that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” This circumstantial evidence test is not completely separate from the Jackson sufficiency standard. In the end, both direct and circumstantial evidence “must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden.” State v. Rosiere, 488 So.2d 965, 968 (La.1986).
Keeping in mind these standards, we have determined that there is sufficient evidence to support the defendant’s conviction of first degree murder. The state presented evidence that human blood was found under defendant’s fingernails on the night of the murder, even after he had showered. Defendant specifically told the officers he had not washed the clothing he had worn that day, but the clothing was discovered still wet in his washing machine. The blue jeans he wore that day still had traces of blood in the fabric, although an insufficient sample remained to determine its origin. Detective Baroni testified defendant stated he had never been inside the victim’s house; however, his fingerprint was lifted from the telephone receiver. Defendant claimed at trial that he used Mrs. Faircloth’s telephone, with her permission, on July 3, 1984. However, “Batman” Batiste testified that defendant did not enter the victim’s home that day. Malveaux told the officers that he left the Zodiac Bar *304 at 9:00 p.m. and went straight home, then he said his car broke down in front of the Venus Lounge at 9:30 p.m., and later he said that he was on his way to visit a friend named Joe who lived in the area (whose surname and address defendant was unable to provide).
At trial, defendant testified on his own behalf and maintained that his car had stopped while he was driving in the area. He claimed that he left the car and walked home, returning later with his wife to find police officers gathered around his car. He acknowledged that several statements he made that night were in error, but claimed they were the result of pressure and beatings by the police officers.[2] Finally, he categorically denied involvement in the victim’s murder. All of the evidence outlined above, when viewed in a light most favorable to the prosecution, is sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant is guilty of first degree murder. This assignment of error has no merit.
ADMISSION OF DEFENDANT’S STATEMENT
In this assignment of error, defendant contends that the trial court erred in permitting the state to introduce his statements without first establishing that they were freely and voluntarily made. He alleges that the state used these exculpatory statements in conjunction with contradictory evidence to prove his guilt. Defendant argues that the state should have set forth the formal foundation requirements because the statements were “admissions” offered for the inference of guilt. Although the state presented evidence that defendant had been advised of his constitutional rights and had signed a waiver before questioning, the state contended that it did not have to prove the free and voluntary nature of the statements since they did not involve the existence of criminal intent. See LSA-R.S. 15:454.
In State v. Andrus, 250 La. 765, 199 So.2d 867 (1967), the court noted that incriminating statements made by the accused are placed in three categories. The first is the confession which admits to the guilt of the crime charged. The second is the admission which involves the existence of criminal intent. The third is the admission or acknowledgment of facts which tend to establish guilt but which do not involve the existence of criminal intent. Id. at 765, 199 So.2d at 880. The court concluded that remarks which are not express admissions of guilt or facts showing criminal intent can be introduced without the foundation necessary for admitting a confession, despite the fact that the statement might be considered inculpatory. Id. at 765, 199 So.2d at 881.
Of course, truly exculpatory statements are never used by the prosecution. Statements which the defendant intended to be exculpatory are instead used to impeach his testimony at trial or to demonstrate inaccuracies in the statement he gave under interrogation and thus to prove guilt by implication. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In Miranda, the Court demanded that the advice-of-rights warning be given regardless of whether the statements are considered inculpatory or exculpatory.
*305 In the instant case, defendant’s statements are exculpatory and do not purport to be confessions under LSA-R.S. 15:451. They do not involve the existence of criminal intent. The state offered these statements in conjunction with other contradictory statements and evidence for the obvious purpose of showing guilt by implication. Therefore, the state was required only to show that defendant had been advised of his constitutional rights and waived the same before making his statements. The state did establish this foundation through the testimony of Detective Edward Baroni, who stated that he had advised defendant of his constitutional rights and obtained a signed waiver before defendant made his statements. Thus, defendant’s statements were admissible without the necessity of complying with the foundation requirements of LSA-R.S. 15:451. This assignment of error is without merit.
Accordingly, for the above reasons the conviction and sentence are affirmed.
AFFIRMED.

. Mrs. Faircloth’s skull was fractured around the area of her temples, apparently by a blunt instrument. The victim's thyroid cartilage (voice box) was fractured on both sides, and the soft tissue of her neck and sternum was extensively bruised. These injuries, as well as the linear pattern of bruises around her neck, were consistent with the positioning of the chain of the victim’s eyeglasses found tightly wrapped around her neck. Large gouges, apparently made by the assailant’s fingernails, were visible on the victim’s breasts.
A copious quantity of blood was found around the victim’s body. A twelve inch wooden stick, covered with blood, was found in the yard about seventeen feet from the victim’s body. A four inch wooden block, covered with *303 blood and other material, was found near the body.
The autopsy further revealed a tear in the victim’s abdominal cavity from the naval area through the vagina and lower bowel to the rectum. Approximately one quart of blood flowed freely in the abdominal cavity. These wounds were consistent with the insertion of the wooden. sticks through the vagina and anus of the victim.
The coroner’s testimony indicated that, although death might have resulted from either the fractured skull or fractured thyroid cartilage, the probable cause of death was shock resulting from the loss of blood.

. Defendant testified the officers beat him to force him to confess. He claimed he was beaten so hard that he was required to seek medical help, and was kicked in the kidneys, resulting in blood in his urine. In rebuttal, the state offered the testimony of Lucille Loyd, a practical nurse who examined defendant at the St. Tammany Parish Jail on July 8, 1984, and Dr. Hung Vanle, a medical doctor who x-rayed and examined defendant at Charity Hospital in Bogalusa, Louisiana, on July 11, 1984. These medical examinations revealed no physical damage. The x-rays did not indicate damage to the kidneys; urinalysis did not reveal traces of blood. Dr. Vanle testified a trauma severe enough to produce blood-tinged urine would have resulted in a hematoma or bruise, which was not evidenced. Further, he indicated only a very mild trauma could have been resolved in the few days lapse between the alleged injury and the examination.
Defendant did not identify the officers who allegedly beat him. The time period during which he claims the beating occurred corresponds to the time that he made his statements to Detective Baroni. Baroni testified that defendant was not beaten in his presence. We find that defendant’s allegations of beating were sufficiently rebutted.