532 So.2d 203 (1988)
STATE of Louisiana
v.
Kirby Jerome BOOTHE.
No. CR87-1072.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
*204 Louis Vogt, Indigent Defender Office, Jonesville, for defendant-appellant.
John Johnson, Dist. Atty., Harrisonburg, for plaintiff-appellee.
Before DOMENGEAUX, KNOLL and KING, JJ.
DOMENGEAUX, Judge.
Kirby Jerome Boothe, a/k/a Rome, the defendant, was charged by a bill of indictment on October 22, 1986, with second degree murder, a violation of La.R.S. 14:30.1. The defendant by way of his defense, filed a motion to suppress several statements *205 made during the investigation of the charge. Subsequent to a hearing, the motion was denied.
The defendant was tried before a jury of his peers and on July 8, 1987, was found guilty. On July 10, 1987, Boothe was sentenced to life imprisonment without the benefits of parole, probation or suspension of sentence. He now appeals raising two assignments of error.

FACTS
On September 18, 1986, Ms. Bonnie Hutchins was killed at her home in Catahoula Parish. Her body was found the following evening after a fire was set in her home. An autopsy showed the cause of death was five stab wounds to the chest.
A confidential informant told a police officer that the defendant was in possession of a gun and some jewelry which had come from the victim's residence. The defendant was arrested and brought to the police station about 10:30 p.m. on the night of September 25, 1986. He was read his Miranda rights and he gave a statement denying any criminal involvement. The defendant was seventeen-years-old at the time and claims to be mildly mentally handicapped. The defendant's father, two brothers and his best friend told the police officer investigating the murder that the defendant had told them that he was in possession of a gun and jewelry that had come from a shed located behind the victim's house.
Subsequent to three or four hours of questioning, Boothe was allowed to speak with his brothers who advised him to tell the truth and that, at that point, he could only be charged with simple burglary. The defendant acknowledged that the deputy questioning him did not promise that he would only be charged with simple burglary.
Around 4 o'clock on the morning of September 26, 1986, the night of his arrest, Boothe admitted that he had broken into the victim's shed, taken a gun and some jewelry, and hid it in the woods. He then reluctantly agreed to show the police officers where the stolen items had been hidden. Boothe and the officers returned to the police station with the stolen items at approximately 6:00 or 7:00 a.m.
A few hours later at about 9:00 a.m. on September 26th, the defendant was awakened and was again read his Miranda rights. He was then interrogated by Jim Morris, a State Trooper. Boothe appeared alert and spoke clearly. He became upset, however, when the trooper began to talk about the possible penalties that a person could receive if convicted of murder, including the electric chair. He then admitted he had actually stolen the gun and jewelry from the house.
During a break in the interrogation, Boothe ran from the interrogation room and escaped into the street. He was apprehended a few blocks away. When he was taken back into custody by Deputy Blunschi and Deputy Alexander, he stated, "I'm going to tell an attorney what the trooper told me." The defendant maintains that the trooper threatened him with the electric chair. The deputies both testified that the defendant did not request an attorney, but, rather, that he merely stated that he was going to tell an attorney that the trooper had threatened him. After the escape, Boothe was returned to his cell and was not questioned again until the next morning.
The following morning, September 27, 1986, Boothe was again read his Miranda rights and was taken to the interview room. Deputy Blunschi explained the law to him and he appeared relatively calm. The defendant then agreed to make a statement which was videotaped. At the beginning of the statement, the defendant stated that he had been pushed and shoved by a police officer, but he maintained he was not making the statement because of any physical abuse or any threats. In his statement, he admitted that he entered the house, stole the gun and jewelry and that he was on his way out when he was confronted by the victim. He stated that the victim was armed with a knife and began to attack him with it, when she accidently stabbed herself. He then told the officers that he went back to the Hutchins home *206 the next day and set fire to the victim and the house because he was scared.

ASSIGNMENTS OF ERROR NOS. 1 AND 2
The defendant asserts that the Trial Court erred in denying his motion to suppress statements made by him to police officers and the physical evidence obtained directly as a result of those statements. The defendant attacks the admissibility of the statements and the evidence based upon two grounds: (1) he did not knowingly, intelligently and voluntarily waive his Fifth Amendment privileges; and (2) he was denied his right to counsel. Defense counsel conceded during his argument that Boothe was read his rights before every questioning, however, he argues that the defendant did not have the capacity to intelligently waive his rights and that the police refused to cease their questioning once he asked for an attorney. The Trial Judge, in admitting the statements into evidence, ruled that none of the statements sought to be admitted were confessions and that the State had met its burden of proof.
Louisiana law makes an important distinction between "admissions" and "confessions". La.R.S. 15:449 provides:
The term "admission" is applied to those matters of fact which do not involve criminal intent; the term "confession" is applied only to an admission of guilt, not to an acknowledgment of facts merely tending to establish guilt.
It follows that the State bears a different burden when seeking to introduce a statement which constitutes an admission as opposed to a statement which constitutes a confession. Before a confession may be introduced into evidence, the State bears the burden of proving it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451. However, the rule that a confession produced by threats or promises is inadmissible in evidence does not apply to admissions not involving the existence of criminal intent. La.R.S. 15:454.
The statements made by the defendant, all of which were read or viewed by this Court, may have been incriminating, but were not confessions. In State v. Andrus, 250 La. 765, 199 So.2d 867 (1967), the Court noted that incriminating statements made by an accused are placed in three categories. The first category is the confession which admits the guilt of the crime charged. The second is the admission which involves the existence of criminal intent. The third is the admission or acknowledgment of facts which tend to establish guilt, but which do not involve the existence of criminal intent. The Court concluded that remarks which were not express admissions of guilt or facts showing criminal intent can be introduced without the foundation necessary for admitting a confession, despite the fact that the statements might be considered inculpatory. See also State v. Malveaux, 499 So.2d 301 (La.App. 1st Cir.1986), writ denied, 505 So.2d 1138 (La.1987). The police officers are required by Miranda to give the advice-of-rights warnings regardless of whether the statements are considered inculpatory or exculpatory. "Therefore, the state was required only to show that defendant had been advised of his constitutional rights and waived the same before making his statements." Id. 499 So.2d at 305.
The statements made by the defendant do not constitute confessions to the crime charged, second degree murder. During the course of the four statements made to the deputies investigating the murder, the defendant admitted to burglarizing a shed, then he changed his story to that of burglarizing a house. He admitted to struggling with the victim, but he denied ever touching the knife or stabbing the victim. He did admit to setting the fire, but only to cover up an accident. Boothe's statements were incriminating, but were not confessions. Accordingly, the State need only have shown that the defendant was advised of his rights and that he waived them. The State met its burden.
The defendant has not alleged that he was not informed of his rights, only that he *207 did not intelligently and knowingly waive them. The defendant presented his mother at the hearing to testify that he was mildly mentally handicapped. Boothe was seventeen-years-old and had completed the eighth grade. He testified that he could read and write. His rights were carefully explained to him and he indicated that he understood them and that he desired to waive them. He also signed a waiver of rights form at each juncture. The Trial Judge found that he possessed sufficient intelligence to knowingly and intelligently waive his rights.
When the issue in a case on appeal is whether a defendant's lack of intellectual ability precluded him from effectively understanding the essential nature of his constitutional rights, much weight is accorded the Trial Court's assessment. State v. Brogdon, 426 So.2d 158 (La.1983); State v. Coleman, 395 So.2d 704 (La.1981). Moderate mental retardation or low intelligence does not vitiate a knowing and voluntary waiver of rights. State v. Thomas, 470 So.2d 413 (La.App. 3rd Cir.1985). The critical factor is whether the defendant was able to understand the rights explained to him and make a knowing and voluntary statement. There was evidence presented from which the Trial Judge could determine that the defendant was able to understand his rights and validly waive them.
Secondly, the defendant alleges that he was denied his right to counsel. He asserts that after his escape he asked to speak to an attorney, but instead was subjected to further interrogation the next day. Mr. Donnie Torrey, a private citizen, was an eyewitness to the defendant's escape and claimed that he heard the defendant ask to speak to a lawyer after he was recaptured. The defendant also testified that he requested an attorney. The two deputies who caught the defendant testified that he only stated that he was going to tell an attorney what the State Trooper had told him and that he did not request an attorney.
In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the United States Supreme Court made it clear that when an accused invokes his right under Miranda to have counsel present during a custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation, even if he has been advised of his rights. An accused, having expressed his desire to deal with the police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. State v. Jones, 451 So.2d 35 (La. App. 2nd Cir.1984), writ denied, 456 So.2d 171 (La. 1984).
Under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and numerous subsequent cases, interrogation must quickly cease when an attorney is specifically requested. See, State v. Hersman, 511 So.2d 476 (La.App. 5th Cir. 1987). In Nash v. Estelle, 597 F.2d 513, 517 (5th Cir.1979), the Court en banc stated:
While the suspect has an absolute right to terminate station-house interrogation, he also has the prerogative to then and there answer questions, if that be his choice. Some persons are moved by the desire to unburden themselves to confessing their crimes to police, while others want to make their own assessment of what to say to their custodians. "[A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, would transform the Miranda safeguards into wholly irrational obstacles to legitimate police activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests." Michigan v. Mosley, 423 U.S. 96, 102, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). When, as in the case at bar, a desire for immediate talk clearly appears from the suspect's words and conduct, but he also states he wants a lawyer (i.e., "I would like to have a lawyer, but I would rather talk to you"), it is sound and fully constitutional *208 police practice to clarify the course the suspect elects to choose.
The statement by Boothe that he wanted to tell an attorney what the trooper had told him was not construed by the deputies as a request for an attorney. The deputies both stated that they did not believe that Boothe's statement or actions indicated an intent to cease questioning until an attorney was present. After the defendant calmed down and was explained the law, he continued to speak with the deputies.
There were two conflicting stories presented at the hearing. Deputies Blunschi and Alexander testified that the defendant did not directly ask for an attorney. The defendant and an eyewitness testified that Boothe said that he wanted to speak to a lawyer. When there is conflicting testimony as to a factual matter, the question of the credibility of the witness is within the sound discretion of the trier of fact. The trier of fact's factual determinations are entitled to great weight and should not be disturbed unless clearly contrary to the evidence. State v. Bell, 395 So.2d 805 (La. 1981). The Trial Judge found the police officers' testimony credible and his determination is supported by the record.
The statements made by the defendant were not confessions but, rather, were admissions. The defendant was read his rights before each statement was made and each time he waived them. Boothe failed to establish that his lack of education or his limited mental ability prevented him from understanding his rights or the consequences of waiving them. The Trial Court, additionally, made the factual determination that the defendant did not expressly ask for an attorney after his escape. Accordingly, these assignments of error lack merit.
For the above and foregoing reasons, the conviction of Kirby Jerome Boothe is affirmed.
AFFIRMED.