STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-886 consolidated with 12-887


STATE OF LOUISIANA

VERSUS

BRADY HARRINGTON

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 49360
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Elizabeth A. Pickett, James T. Genovese, and Shannon J. Gremillion, Judges.


CONVICTION AFFIRMED; SENTENCE VACATED AND
REMANDED FOR RESENTENCING.

Michael Harson
District Attorney, Fifteenth Judicial District Court
Ted L. Ayo
Assistant District Attorney
100 North State St., Suite 215
Abbeville, LA 70510
(337) 898-4320
COUNSEL FOR APPELLEE:
	State of Louisiana

Beth S. Fontenot
Louisiana Appellate Project
P. O. Box 3183
Lake Charles, LA 70602
(337) 491-3864
COUNSEL FOR DEFENDANT/APPELLANT:
	Brady Harrington

**GREMILLION, Judge.**

Defendant's friend, Paxton Trahan, kicked open a door and Defendant, Brady J. Harrington, shot and killed Trahan's father. A Vermilion Parish grand jury indicted Defendant and Trahan for second degree murder, a violation of La. R.S. 14:30.1. On the same date, the men were separately indicted for obstruction of justice, a violation of La.R.S. 14:130.1.[1] A jury convicted Defendant of these crimes.

The trial court sentenced Defendant to the mandatory term of life in prison without benefit of parole, probation, or suspension of sentence on the second degree murder conviction and to five years at hard labor on the obstruction of justice conviction. The sentences were ordered to be served concurrently.

Defendant now appeals his convictions and sentences. He assigns five errors but effectively abandons the fifth. This court upholds both convictions and the sentence for obstruction of justice but must vacate the second degree murder sentence and remand for resentencing based on a recent pronouncement by the United States Supreme Court.

## ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, Defendant argues that the State's evidence was not sufficient to support his convictions. Specifically, he argues that both of his experts at trial testified that he was unable to know right from wrong at the time of the offense or to form specific intent. Jurisprudence requires that we address this assignment first. *State v. Hearold*, 603 So.2d 731 (La.1992), and *State v. Kennerson*, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367.

---

[1] This matter is consolidated with docket number 12-887 in which Defendant's conviction and sentence for obstruction of justice are affirmed.

The core of Defendant's argument is that two trial experts testified that he did not have the cognitive capacity to be criminally liable for his actions, while the State produced a single expert to refute them. He notes that the State expert spent less time with him and did not perform behavioral testing on him. Also, one of Defendant's friends, Mason Bedgood, testified that he was "somewhat slow" and was a drug addict with a passive personality who looked up to Trahan. Bedgood also testified that Trahan told him that he got Defendant to kill the victim for him.

These points were all before the jury, including Defendant's mild mental retardation and drug usage. "It was within the jury's wide purview to make credibility determinations and decide the weight of the expert testimony. *See State v. Mussall*, 523 So.2d [1305], 1310 '(La.1988)]." *State v. Williams*, 07-1407, p. 27 (La. 10/20/09), 22 So.3d 867, 887, *cert. denied*, __ U.S. __, 130 S.Ct. 3278 (2010). Defendant claims the jury's decision was irrational, but this is not supported by the mere fact that he produced one more expert than the State or that his experts performed more testing than the State's expert. The evidence showed that Defendant obtained his G.E.D. certificate; also one of Defendant's experts acknowledged "there are certainly times when he can distinguish right from wrong."

Further, Defendant mentions that the State's expert would not give an opinion regarding whether he was able to premeditate the murder. Such a refusal did not harm the State's case, as premeditation is not an element of the crime. The elements of the crime include intent and act but not premeditation. La.R.S. 14:8; La.R.S. 14:30.1. This court has explained, "Defendant also points out that there is no evidence of any premeditation to attack or commit theft or any other crime against Mr. Bernard. We do not find that any of these arguments present a reasonable hypothesis of innocence. No premeditation is required to prove specific

2

intent." *State v. Latiolais* (La.App. 3 Cir.), 453 So.2d 1266, 1269, *writ denied*, 458 So.2d 125 (La.1984).

For the reasons discussed, this assignment lacks merit.

### ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Defendant argues that the trial court erred by ruling that his statements to police were free and voluntary, as the court did not consider psychologists' reports regarding his mental status. Although the State acknowledges that Defendant objected to the admissibility of his recorded statements at a pretrial hearing, it argues that the issue is moot because he failed to take a pretrial writ or renew his objection at trial.

The admissibility of the confession was contested at a pretrial hearing. However, when the video confession was offered at trial, Defendant initially expressed no objection. After most of the confession was played, Defendant moved for a mistrial, arguing that despite the pretrial hearing and ruling on admissibility, the court was required to make a separate determination at trial that the confession was free and voluntary.

The trial court denied the motion, stating that it was untimely. The trial court also stated that it had "reviewed the entire confession" and found it to be free and voluntary. The State briefly questioned Lieutenant Sammy Laporte of the Vermilion Parish Sheriff's Office on the issue, and the officer indicated that the confession was given freely and voluntarily.

Thus, defense counsel affirmatively stated that he had no objection when the video confession was initially offered at trial and failed to include the current argument regarding the psychologists when he finally challenged its admissibility. We find no jurisprudence that indicates Defendant's second, more limited, argument at trial waived or precluded appellate review of his earlier arguments.

3

The second circuit has stated a general analysis regarding admissibility of confessions:

> Before a confession may be introduced into evidence, "it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." La. R.S. 15:451. The state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession at a hearing on a motion to suppress. *State v. Coleman, supra*; *State v. Hills*, 354 So.2d 186 (La.1977). The state must also affirmatively prove that the defendant was first advised of his *Miranda* rights and that the confession was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. *State v. Johnson*, 36,014 (La.App.2d Cir.6/12/02), 821 So.2d 652. The testimony of the interviewing police officer alone may be sufficient to prove the defendant's statement was given freely and voluntarily. *State v. Trotter*, 37,325 (La.App.2d Cir.8/22/03), 852 So.2d 1247, *writ denied*, 2003-2764 (La.2/13/04), 867 So.2d 689, *recon. denied*, 2003-2764 (La.4/23/04), 870 So.2d 282; *State v. Henderson*, 31,986 (La.App.2d Cir.8/18/99), 740 So.2d 240.
>
> In *State v. Jackson*, 381 So.2d 485 (La.1980), and *State v. Morvant*, 384 So.2d 765 (La.1980), the Louisiana Supreme Court stated the principles under which the admissibility of a confession must be judged. As a matter of federal constitutional law, a confession obtained by any direct or implied promises, however slight, or by the exertion of any improper influence, must be considered involuntary and inadmissible. *See Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897) and *State v. Roddy*, 33,112 (La.App.2d Cir.4/7/00), 756 So.2d 1272, *writ denied*, 2000-1427 (La.5/11/01), 791 So.2d 1288.
>
> The admissibility of a confession is a question for the trial court, whose conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence. *State v. Coleman, supra*; *State v. Thibodeaux*, 98-1673 (La.9/8/99), 750 So.2d 916, *cert. denied*, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000). Because the trial court has the opportunity to observe the witnesses and assess their credibility, we place great weight on its factual determinations. *State v. Crews*, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082.

*State v. Roshell*, 40,374, pp. 6-7 (La.App. 2 Cir. 12/14/05), 916 So.2d 1268, 1271-72, *writ denied*, 06-771 (La.10/6/06), 938 So.2d 69.

Laporte stated that he advised Defendant of his *Miranda* rights; Defendant then waived said rights and made factual admissions about the murder. Under

4

cross-examination, Laporte testified that he questioned Defendant about his educational level, but trial counsel did not ask what reply was made. On re-direct, Laporte observed that Defendant also wrote out a statement.

Defense counsel recalled Laporte to ask him about an earlier incident in which then-juvenile Harrington threatened to commit suicide. The deputy testified he did not remember such an incident and did not recognize Defendant when he encountered him in the current investigation. The trial court then ruled that the statement was free and voluntary. As Defendant now argues, the trial court did not view the confession or refer to the psychological reports, which were produced after the confession was made.

On appeal, Defendant cites no jurisprudence showing that the trial court should have viewed the psychological reports; also, the trial court clearly stated that it viewed the recorded confession. Defendant argues that he should have had an interested adult with him during questioning but acknowledges that having such an adult present is not absolutely required.

The State argues that Defendant was seventeen years old when he shot the victim and, thus, was not eligible for the protections that Louisiana jurisprudence affords a juvenile. Further, the State argues that the key issue is not whether Defendant had any degree of mental retardation but whether he understood his *Miranda* rights. Defendant's written confession shows his date of birth as September 20, 1990; the offense occurred in April 2008. Thus, he was not a "child" as defined by Louisiana law. La.Ch.Code art. 804(1); La.Const. art. 5, § 19. As for the State's other point, the supreme court has explained:

> When the issue in a case on appeal is whether a defendant's lack of intellectual ability precluded him from effectively understanding the essential nature of his constitutional rights, much weight is accorded the Trial Court's assessment. *State v. Brogdon*, 426 So.2d 158 (La.1983); *State v. Coleman*, 395 So.2d 704 (La.1981).

5

> Moderate mental retardation or low intelligence does not vitiate a knowing and voluntary waiver of rights. *State v. Thomas*, 470 So.2d 413 (La.App. 3rd Cir.1985). The critical factor is whether the defendant was able to understand the rights explained to him and make a knowing and voluntary statement. There was evidence presented from which the Trial Judge could determine that the defendant was able to understand his rights and validly waive them.

*State v. Boothe*, 532 So.2d 203, 207 (La.App. 3 Cir. 1988).

Like the court below, this court has reviewed the entire DVD of the recorded confession. Defendant appears lucid throughout and appears to fully understand the circumstances. Giving due weight to the determinations of the trial court, and in view of Laporte's testimony and Defendant's demeanor and responses during his recorded confession, together with our own review of the confession, we conclude that this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant argues that the trial court erred by denying his challenge for cause of a venire member who expressed doubts regarding sanity-based and intoxication-based defenses.

This court recently explained:

> By the time the jury selection process was completed, the defendant had exhausted all of his peremptory challenges.
>
>> When an accused has exhausted all of his peremptory challenges before completion of the jury panel, he is entitled to complain on appeal of a ruling refusing to maintain a challenge for cause made by him. *State v. Monroe*, 366 So.2d 1345 (La.1978), appeal after remand, 397 So.2d 1258 (La.1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1411, reh. denied, 463 U.S. 1249, 104 S.Ct. 36, 77 L.Ed.2d 1455 (1983).

*State v. Scriber*, 605 So.2d 661, 664 (La.App. 2 Cir.1992).

> As it applies in this matter, La.Code Crim.P. art. 797(4) provides that "[t]he state or the defendant may challenge a juror for cause on the ground that . . . [t]he juror will not accept the law as given to him by the court [.]" Additionally, the supreme court has held that:

Prejudice is presumed when a district court erroneously denies a challenge for cause and the defendant ultimately exhausts his peremptory challenges. *State v. Kang*, 02-2812, p. 3 (La.10/21/03), 859 So.2d 649, 651; *State v. Robertson*, 92-2660, p. 3 (La.1/14/94), 630 So.2d 1278, 1280. A district court's erroneous ruling which deprives a defendant of a peremptory challenge substantially violates that defendant's rights and constitutes reversible error. *Kang*, 02-2812, at p. 3, 859 So.2d at 652; *State v. Cross*, 93-1189, p. 6 (La.6/30/95), 658 So.2d 683, 686; *State v. Bourque*, 622 So.2d 198, 225 (La.1993), *overruled on other grounds by State v. Comeaux*, 93-2729 (La.7/1/97), 699 So.2d 16; *State v. McIntyre*, 365 So.2d 1348, 1351 (La.1978). When a defendant uses a peremptory challenge after a challenge for cause has been denied, the defendant must show: (1) erroneous denial of the challenge for cause; and (2) use of all peremptory challenges. *Kang*, 02-2812, at p. 3, 859 So.2d at 652; *Cross*, 93-1189 at p. 6, 658 So.2d at 686; *Robertson*, 92-2660 at p. 2, 630 So.2d at 1280; *State v. Lee*, 559 So.2d 1310, 1316 (La.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991). In the instant case, defendant exhausted all of his peremptory challenges, and therefore, his objection to the ruling refusing to sustain his challenge for cause is properly before the court.

*State v. Lindsey*, 06-255, pp. 2-3 (La.1/17/07), 948 So.2d 105, 107.

*State v. Barnes*, 11-1242, pp. 4-5 (La.App. 3 Cir. 5/2/12), 93 So.3d 666, 669.

The record indicates that Defendant exhausted his peremptory challenges, and the State does not dispute this point. During voir dire, venire member Rachael Lormand expressed reservations about the viability of an insanity-based defense. At one point she said, "I think it's somewhat of a copout." Later, the following colloquy occurred:

Q Yes, Ms. Lormand. Do you take the same position that Mr. Bengston does?

A Well, I don't agree with it. It's the law that I don't agree with.

Q So it's a law that you just couldn't follow?

A Right.

7

Q  And wouldn't follow?

A  Again, I'd have to hear the case, I guess.

Q  Well, sure; absolutely.

A  Again, it's somewhat of a copout.

As the parties discussed their peremptory challenges, the following comments were made:

BY THE COURT:  Mr. Ayo, Rachel Lormand?

BY MR. AYO:  State accepts.

BY MR. CARROT:  Defense moves for cause.  She said it was a copout.  Voluntary intoxication defense was a copout.

BY MR. AYO: But she said she could accept the law. She just had to hear all the evidence, Your Honor.

BY MR. CARROT: The last thing she said that she couldn't, that she thought it was a copout.  She said what you said about the insanity defense.

BY THE COURT: Y'all don't talk to each other; y'all talk to me. What I have written down is that she said she doesn't agree with the law. She doesn't know if she could accept it. But after that, she said she couldn't follow the law. Then she said, "Well, I would have to hear the case." So I'm going to deny cause.

The prospective juror's final response appears equivocal.  However, a trial court's decision on a challenge for cause is subject to deference on review as a majority opinion by the supreme court stated:

> Both in brief and oral argument, the defendant places much emphasis on Mr. Whitcomb's use of the word "probably" in response to defense counsel's question regarding his likely vote if he thought "maybe" the defendant was guilty.  The voir dire transcript of defense counsel's question and Mr. Whitcomb's response reads as follows:
>
>> Q:  If you were a juror that decided this case, and after having heard all of the evidence in the case, you thought that maybe the Defendant did this?
>>
>> A:  Maybe, it would probably be Not Guilty.

8

The defendant argues that "probably" indicates Mr. Whitcomb's unacceptable hesitancy to find the defendant not guilty if the state fails to prove its case beyond a reasonable doubt. However, we note that Mr. Whitcomb first used the word "probably" when he stated that he would "probably" tend to believe the testimony of police officers over that of lay witnesses; therefore, if we were to give "probably" the inference that the defendant desires, we would not be here in the first place. It seems that Mr. Whitcomb did not utilize the word "probably" to demonstrate his "insistence" on crediting police testimony or out of an unwillingness to follow the law as provided by the trial court, but rather, it seems that Mr. Whitcomb utilized the word more from his hesitancy to answer questions in a process to which he was unaccustomed.

In reversing the judgment of the trial court, the court of appeal found Mr. Whitcomb "clearly indicated that he would give more weight to the testimony of a police officer than a lay witness." *Kang*, 01-1262, p. 12 (La.App. 5 Cir 10/29/02), 831 So.2d 409, 415. Further, the court of appeal found that Mr. Whitcomb never unequivocally indicated he could disregard his initial bias toward police officers. *Id.* These conclusions are not supported by the record and demonstrate the court of appeal's failure to give proper deference to the trial court's findings. Mr. Whitcomb's responses during voir dire should be viewed as a whole, not on a piecemeal basis. *Lee*, 93-2810 at p. 9, 637 So.2d at 108. Though some of Mr. Whitcomb's remarks or references could be viewed as questionable standing alone and out of context, when the voir dire is properly reviewed as a whole, there is no evidence of Mr. Whitcomb's partiality. The record supports the trial court's conclusion that Mr. Whitcomb did not state he would give an officer's testimony more weight simply because he was employed as a police officer. The court of appeal erred in concluding that Mr. Whitcomb's voir dire testimony clearly indicates his predisposition towards the testimony of a police officer than to that of a lay witness. Moreover, it is apparent from this conclusion that the court of appeal incorrectly failed the [sic] give the trial court's conclusions any degree of deference. Properly reviewing the voir dire record as a whole, we find no facts from which we may reasonably imply Mr. Whitcomb's bias, prejudice or inability to render a judgment according to law.

In sum, the court of appeal should not have disturbed the trial court's proper refusal to strike Mr. Whitcomb for cause. The defendant's assignment of error is without merit. Therefore, we reverse the court of appeal's judgment to the contrary and remand this case to the court of appeal to consider the defendant's remaining assignment of error.

*State v. Kang*, 02-2812, pp. 7-9 (La. 10/21/03), 859 So.2d 649, 654-55.

The *Kang* opinion, viewed as a mandate for deference to trial court rulings, supports a holding that the court in the present case did not err. Thus, this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER FOUR

In his fourth assignment of error, Defendant argues that his life sentence for second degree murder, although mandated by statute, violates the United States Supreme Court's recent pronouncement in *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455 (2012). The *Miller* court held that the Eighth Amendment prohibits mandatory life sentences without parole for those under eighteen at the time the offense was committed. The Supreme Court explained that "[s]uch mandatory penalties, by their nature, preclude the sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id*. at 2467.

Pursuant to La.R.S. 13:4448, this court notified the Attorney General's Office of this issue. On December 10, 2012, this court received that office's brief. Its first argument is that there is no showing this argument was raised below. However, sentencing took place on February 28, 2012. The Supreme Court issued the *Miller* opinion on June 25; therefore, Defendant did not have the opportunity to raise the issue below.

The State's original brief notes that the defendant in *Miller* was fourteen years old, while the present Defendant was seventeen years old at the time of the offense. However, this fact has no bearing on the current analysis. The record shows that Defendant received the mandatory sentence prescribed by La.R.S. 14:30.1: life in prison, without benefit of parole, probation, or suspension of sentence.

10

The Attorney General's Office concedes that if the merits are addressed, the murder sentence must be vacated, and the case remanded for resentencing.[2] However, it suggests resentencing should be postponed until the legislature acts to bring the statutory sentence in line with *Miller*. Alternatively, it proposes that Defendant should have to serve at least thirty years in prison before becoming eligible for parole, pursuant to La.R.S. 15:574.4, which states in pertinent part:

> D.    (1) Notwithstanding any provision of law to the contrary, any person serving a sentence of life imprisonment who was under the age of eighteen years at the time of the commission of the offense, except for a person serving a life sentence for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1), shall be eligible for parole consideration pursuant to the provisions of this Subsection if all of the following conditions have been met:

> (a) The offender has served thirty years of the sentence imposed.

We are not at liberty to declare all or part of La.R.S. 15:574.4(D) unconstitutional as no challenge to that statute has been brought before us. Neither can we take it upon ourselves to rewrite the statute so as to bring it in line with *Miller* or apply a reformed version to our analysis of Defendant's assigned error. At this juncture, we can only recognize that Defendant's sentence must be vacated and remanded because it clearly runs afoul of *Miller.*

For the reasons discussed, this assignment has merit. The second degree murder sentence must be vacated, and the case remanded for resentencing in accordance with *Miller*.

### ASSIGNMENT OF ERROR NUMBER FIVE

In the original brief, appellate counsel advised that she was requesting the transcript of the hearing on Defendant's motion for new trial and motion for post-

---

[2]The Attorney General's Office cites *State v. Crockett*, an unpublished case bearing docket number 12-415 (La.App. 1 Cir. 11/14/12), which vacated a sentence and remanded for resentencing, pursuant to *Miller*.

verdict judgment of acquittal.  She reserved the right to file a supplemental brief, but did not file one.  We consider this assignment abandoned.

**DECREE**

Defendant's conviction for second-degree murder is affirmed.  However, the sentence for second degree murder is, hereby, vacated, and the case remanded for resentencing in accordance with *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455 (2012).

**CONVICTION AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING**.