J^PETTIGREW, J.
Defendant, Brad Blank, was charged by bill of information with possession with intent to distribute methamphetamine greater than 200 grams but less than 400 grams (Count 1), a violation of La. R.S. 40:967 A(l) and La. R.S. 14:24, and possession of methamphetamine greater than 200 grams but less than 400 grams (Count 2), a violation of La. R.S. 40:967 F(2)(b) and La. R.S. 14:24. He pled not guilty to both counts. Following a jury trial, the defendant was found guilty as charged on both counts.[1] The State filed an habitual offender bill of information charging defendant as a second felony offender. A hear *1212 ing on the habitual offender bill was held, and, after being advised of his rights, defendant stipulated that he was a second felony habitual offender.[2] Subsequently, the trial court sentenced defendant on Count 2 to serve 30 years at hard labor, without benefit of parole, probation or suspension of sentence, and to pay a fine of $175,000.00. In lieu of payment of the fine, the trial court ordered that defendant serve five years concurrent with his sentence. At the sentencing hearing, the trial court also stated that it was not sentencing defendant for his conviction on Count 1 because a sentence on both counts would constitute double jeopardy.
As the defendant was not sentenced on Count 1, that conviction would normally not be appealable. La. Code Grim. P. art. 912; State v. London, 316 So.2d 743 (La.1975). However, because defendant’s conviction on Count' 1 could form the basis of an habitual offender bill of information and sentence, we will exercise our supervisory jurisdiction and address defendant’s convictions on both counts in this appeal.[3]
| .FACTS
In January of 1998, Louisiana State Police conducted a sting operation involving the purchase of narcotics. A man who had previously been arrested became a confidential informant (Cl) and agreed to cooperate with law enforcement authorities. The Cl contacted Christopher McDuffie and arranged for McDuffie to purchase crystal methamphetamine. McDuffie met with the Cl in a local Baton Rouge hotel and gave him $8,000.00 in cash to obtain the illegal drugs. This transaction was secretly videotaped by troopers with the Louisiana State Police, who simultaneously viewed the transaction on audio and visual monitoring equipment. The Cl then made a telephone call to his source in Houston and arranged to purchase the crystal methamphetamine. The Louisiana State Police contacted Texas authorities and arranged for a monitored purchase in Houston by the Cl. After this Texas transaction, over 200 grams of methamphetamine were delivered to the Louisiana authorities. The Cl arranged for the delivery of the drugs to McDuffie, and the Louisiana State Police again provided for the monitoring and videotaping of the transaction in a local hotel room. McDuffie and defendant arrived at the hotel room and stated that they were there to pick up the methamphetamine. After the men weighed and packaged the drugs, a police swat team arrested McDuffie and defendant.
CHALLENGES FOR CAUSE
In assignments of error numbers two and three, defendant contends that the trial court erred in denying his challenges for cause as to prospective jurors Tony Pennywell and William Cobb. Defendant argues that Mr. Pennywell could not be impartial, “would consider law enforcement witnesses as being superior to other witnesses,” and was not rehabilitated. Regarding Mr. Cobb, defendant asserts that Mr. Cobb would give the testimony of law enforcement personnel greater weight. Defendant further contends that Mr. Cobb’s belief that the defendant was guilty indicated he could not be a fair and impartial juror. The State argues that despite the answers of the two challenged prospective jurors, which revealed their bias towards law Lenforcement witnesses, the to *1213 tality of their answers indicate that they were able to be impartial.
Regarding defendant’s claims that the trial judge erred in denying his challenges for cause, in State v. Lutcher, 96-2378 (La.App. 1 Cir. 9/19/97), 700 So.2d 961, writ denied, 97-2537 (La.2/6/98), 709 So.2d 731, we held:
To prove there has been error warranting reversal of the conviction and sentence, defendant need only show (1) the erroneous denial of a challenge for cause, and (2) the use of all his peremptory challenges. The trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the entire voir dire reveals the court abused its discretion.
Lutcher, 96-2378 at 5, 700 So.2d at 966 (citation omitted).
In State v. Cross, 93-1189, p. 6 (La.6/30/95), 658 So.2d 683, 686, the Louisiana Supreme Court held that “[prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges.” Therefore, when a defendant uses all of his peremptory challenges, a trial court’s erroneous ruling depriving him of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of the conviction and sentence. State v. Maxie, 93-2158, p. 15 (La.4/10/95), 653 So.2d 526, 534. Because both the record and the defendant’s brief reflect that the defendant exhausted his peremptory challenges, we need only decide whether the trial judge erred in denying defendant’s challenges for cause.
Louisiana Code of Criminal Procedure article 797 provides the grounds for challenges for cause. The article states, in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient" ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
ls(4) The juror will not accept the law as given to him by the court ....
Even when a prospective juror declares his ability to remain impartial, a challenge for cause should still be granted if the prospective juror’s responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to the law may be reasonably inferred. State v. Thompson, 489 So.2d 1364, 1370 (La.App. 1 Cir.), writ denied, 494 So.2d 324 (1986).
During the voir dire examination of the first panel of prospective jurors, the trial court asked each person on the panel whether he or she had friends or relatives who were employed in law enforcement. Mr. Pennywell indicated that he had an ex-brother-in-law and nephew who were both Baton Rouge City police officers. When asked if these relationships would affect him, Mr. Pennywell stated that he “probably [would] lean toward law enforcement.” In further answers, Mr. Pennywell indicated that he would find that police officers who testified for the State were more credible than other witnesses.
Mr. Cobb stated that one of his cousins was recently retired from the Baton Rouge City Police Department and that his nephew was currently an officer in that same department. However, he did not believe that his “ability to sit as a juror” would be affected by those relationships.
In response to questions about being a victim of a crime, Mr. Cobb stated that he was the owner of rental properties that were frequently burglarized and that he had a strong dislike toward people who *1214 distribute drugs. The court continued to question the panel about their ability to accept and apply the principles of law concerning the burden of proof, presumption of innocence, and right to remain silent. No panel member indicated that they could not apply the law.
In individual questioning, Mr. Pennywell indicated he would accept the reasonable doubt standard applicable to the case. The prosecutor asked Mr. Pennywell again about his relationships with law enforcement personnel and his ability to be impartial. He said that he could try to be fair and impartial. Mr. Cobb also stated that he “could try” to apply |fithe law to the facts of the ease. Defendant’s counsel asked questions about defendant’s right not to testify during the trial. Mr. Penny-well disagreed that “the only way that ... [defendant] would testify and be a bad witness is if he’s guilty.”
Defendant’s counsel also asked Mr. Cobb and Mr. Pennywell questions about whether either had already formed an opinion. The pertinent part of the colloquy between Mr. Cobb and defense counsel was as follows:
Q. Okay. Mr. Cobb, you — -you stated and, I mean, there’s — there’s a lot of us. See? I have certain theories and all, things that may seem farfetched. I think the government has a lot to do with drug distribution. But, nonetheless,. — I knew it. You know, I — and I’m not — -I’m not trying — I sense that you think Mr. Blank and Mr. McDuffie are guilty and I — that means you would have formed an opinion. I know that I’m — the kind of person I am, once I form an opinion or it takes a lot to. — to really change my mind. Do you think you’re the same way once you form an opinion, it’s tough to change your mind?
A. It was hard to hear the list of witnesses without forming an — an opinion. And the — I have mentioned I get broken into in — -on my rental properties — properties and most of the time the people who break in are breaking in to buy drugs.
Q. To get money to buy drugs?
A. Uh-huh.
Q. Well, do you think Mr. Blank’s guilty before we start the trial? Don’t you agree that he’s starting with one strike against him?
A. If I’m on a jury, yeah.
Q. Is there anything that I could tell you to change your mind? Is there anything I could tell you that would make you change your mind?
A. Considering that — the—the quantity of drags that were involved or that were in possession, I don’t believe there is.
Q. Okay. Is there anything Mr. Miller can tell you that would make you change your mind?
A. Mr. Miller’s the one that’s going to try — try to prove that — that it — that— that they are guilty.
Q. Okay. In fact, there’s really nothing that the judge can tell you that could change your mind, is there?
A. Well, if the facts came out that that — if the facts of — -If the testimony came out and it’ll show me that they were |7innocent, no, I would have no problem saying, hey, they’re innocent. It’s just that I — I’ve got a prejudice against drug dealers and — and I also have a prejudice due to the fact that I’ve personally been affected by — by drugs and — and the list of witnesses led me to believe that they have a pretty good case.
Q. The list of witnesses led you to believe they have a pretty good case?
A. (Mr. Cobb nodded.)
Defense ■ counsel’s questioning of Mr. Pennywell was as follows:
Q. Okay. Okay. God, another thing about getting older, you can’t see anymore. Mr. Pennywell, I know you were shaking your head up and down. And I take it — I take it you have some stead *1215 fast opinions on when you make a decision, if you’re going to stand by it or not?
A. That’s true.
Q. You stand by your opinion?
A. Yeah, pretty much.
Q. Okay. Now, you have a number of your former family members that are police officers or law enforcement personnel. You’ve also expressed you tend to go along with police officers. You— you would tend to side with them. You think police officers are generally truthful.
A. Yeah, pretty much.
Q.... I sense that you also have formed an opinion that Mr. Blank and Mr. McDuffie are guilty because they’re accused?
A. I haven’t formed an opinion. I’m— just — just to say, with the witness list, all state troopers, I respect state troopers. I don’t know why. I just do. I just can’t see seven or eight troopers getting up here and saying something that’s not true.
Q. Well, we don’t know what the state troopers are going to say?
A. True. That’s an opinion. I’ve formed an opinion. I’m prejudice [sic].
Q. I don’t know what they’re going to say so I would hope that you didn’t.
A. But if the de — if the State is calling state troopers, I’m sure it’s not going to be — It’s not something good for them.
| sIn response to further questioning by the codefendant’s attorney, both Mr. Pen-nywell and Mr. Cobb indicated that they would give more weight to the testimony of police officers than a lay person. Finally, the trial judge questioned the two prospective jurors about the weight that they would give a police officer’s testimony if they believed that the officer was incorrect or not truthful. Both men stated if that were the case, they would not have a problem with “discrediting” the officer’s testimony and would not accept the testimony as “Gospel truth.”
When considered in their entirety, the responses of Mr. Pennywell and Mr. Cobb “reveal facts from which bias, prejudice, or inability to render judgment according to the law may be reasonably inferred.” See Thompson, 489 So.2d at 1370. Additionally, both men indicated bias towards the testimony of police officers, indicating that they would give more weight to the testimony of police officers than a lay person. Following our review of the voir dire as a whole, we find that the trial court committed reversible error in failing to grant the defendant’s challenges for cause as to Mr. Pennywell and Mr. Cobb. Therefore, the defendant’s convictions are reversed, his sentence is vacated, and the matter is remanded for a new trial.[4]
CONVICTIONS REVERSED; SENTENCE VACATED; REMANDED FOR NEW TRIAL.

. Christopher McDuffie was charged with the identical offenses in the same bill. Defendant and McDuffie were tried together, and McDuffie was also found guilty as charged on both counts. His unconsolidated appeal is pending in this court. State v. McDuffie, No. 99 KA 0596.

. Defendant’s appeal regarding his adjudication and sentence on Count 2 as an habitual offender is addressed in his unconsolidated appeal in the companion case, State v. Blank, No. 99 KA 0483 (La.App. 1 Cir. 11/5/99), also decided this date.

. We note that the language in Louisiana Code of Criminal Procedure article 912 C is not exclusive. Article 912 C provides, in pertinent part, "[t]he judgments or rulings from which the defendant may appeal include, but are not limited to: (1) A judgment which imposes sentence.” Because defendant's conviction on Count 1 could subject him to a sentence as an habitual offender, we find that Article 912 C should not operate to preclude defendant from appealing this conviction.

. Because we remand this matter for a new trial, it is not necessary for us to discuss defendant's first assignment of error, which addresses the trial court’s failure to grant his motion for a mistrial based upon the improper introduction of the videotapes of the drug transactions into evidence without the proper foundation.