831 So.2d 409 (2002)
STATE of Louisiana
v.
Frank W. KANG.
No. 01-KA-1262.
Court of Appeal of Louisiana, Fifth Circuit.
October 29, 2002.
*410 Paul D. Connick, Jr. District Attorney, 24th Judicial District, Thomas J. Butler, Terry M. Boudreaux, Richard R. Pickens, II, Assistant District Attorneys, Gretna, LA, for Appellee.
Robert Glass, New Orleans, LA, for Appellant.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and MARION F. EDWARDS.
MARION F. EDWARDS, Judge.
Defendant/Appellant, Frank W. Kang, appeals his conviction for second degree murder. For the following reasons, we affirm.
Defendant, Frank Kang, was indicted by a grand jury for second degree murder in violation of LSA-R.S. 14:30.1.[1] Kang pled not guilty and filed several pre-trial motions including a motion to suppress his statements on the basis they were given after an illegal arrest. After a two-day hearing, the trial court denied Kang's Motion to Suppress. Kang proceeded to a three-day trial on November 14, 2000, and on November 16, 2000, the jury returned a unanimous verdict finding him guilty as charged.
Thereafter, Kang filed a motion for new trial based on the trial court's refusal to strike a prospective juror for cause. Kang's motion was denied, and he was sentenced to life imprisonment without the benefit of parole, probation or suspension of sentence.
In the early morning of March 4, 2000, the victim, Vuong Nguyen, and a group of others, including Toan Bui, Quoc Nguyen, Joe Tran, Phong Trinh and Thao Huynh went to the Pyramid Club in Metairie.[2] When they arrived, they encountered defendant, Frank Kang, and his friends, James Oh and Duy Hoang, inside the club.[3] Within 15 to 20 minutes, a fight broke out between the two groups. Beer bottles were thrown but no weapons were involved and no one was injured. Security broke up the fight and detained several of the participants, including the victim and Kang, in handcuffs outside the club. After determining that no one wanted to press charges, security released the detainees in pairs of two in ten minute intervals and told them to leave the premises.
As the parties were leaving the parking lot of the club, there was a verbal confrontation between the victim and Kang. Mai Linh Tran and Hye Soo Na, friends of Kang, who were in the parking lot of the club after the fight, testified they saw the victim arguing with Duy Hoang, who was in James Oh's car along with Kang. They saw the victim point to Kang and heard him say, "I'm going to get you." Lucy Kim, Kang's cousin, stated she was in James' car when the victim approached. She testified that the victim told Kang to *411 get out of the car and then said, "Come out, I'll get you. If you don't come out, I'm going to kill you." Kang also testified that the victim threatened to kill him while they were in the parking lot of the club. He stated the victim made a gesture with his hand that indicated the victim was going to shoot Kang.
According to Thao Huynh, a friend of the victim, Kang was inside a car when Kang and the victim started arguing as the victim passed the car. Thao testified, as she pulled the victim away from the car, she heard someone in the car say, "Not yet; too many people around. Don't do it." She then heard Kang tell the victim, "Wait until I catch you slipping."
Thereafter, the two groups left the club parking lot. The victim and his friends left in two separate cars with the victim driving his white Honda Accord, with Toan and Quoc as passengers. Joe Tran was driving a black Honda Civic, with Phong and Thao as passengers. Kang and Duy left the club as passengers in James Oh's black Lexus. According to the testimony, all parties were headed home to the Westbank.
As the three cars were southbound on Causeway Boulevard near the I-10 eastbound exit, Kang fired several shots at the victim's car with a 9mm semiautomatic assault pistol. One fatal shot hit the victim in the neck severing his carotid artery. The victim's car hit an attenuator and drifted off the road hitting a tree in the median before coming to a rest. The perpetrators fled the scene and disposed of the gun before driving to the Westbank. In particular, Kang wiped the gun clean and discarded it under a couch by a dumpster at a Burger King on Airline Drive.
Officer John Richards, a Causeway police officer, was several feet behind the three cars at the time of the shooting but did not see any guns or hear any shots. He saw Oh's black Lexus take off at a high rate of speed and initially thought the incident was a two-car accident. When he arrived at the victim's car, he saw that the driver was shot. He notified the Jefferson Parish Sheriff's Office who took over the investigation.
Detective Randy Thibodeaux was patrolling the Westbank when he heard a broadcast of the incident. He stopped a vehicle near the Stonebridge subdivision that matched the description of the black Lexus involved in the shooting. Upon closer inspection, Detective Thibodeaux discovered the vehicle was actually a black Honda. He asked the four occupants for identification and found James Oh, the only named suspect in the shooting, to be one of the passengers. All of the occupants, including Kang, were then transported to the Detective Bureau.
At the Detective Bureau, Kang gave two statements after being advised of his rights. In the first statement, Kang denied any knowledge of the shooting. He was later advised that he was going to be charged with second degree murder. Thereafter, Kang gave a second statement wherein he confessed to being the trigger-man in the shooting but claimed the shooting was self-defense. Kang stated the victim and Joe Tran tried to box in his vehicle with their cars. Kang alleged he saw the back passenger window of the victim's car go down and he thought they were going to shoot him. He maintained he feared for his life.

LAW AND ANALYSIS
In his first assignment of error, Kang argues that prospective juror Lawrence Whitcomb should have been stricken for cause because he was openly partial to the State during voir dire and expressed his inability or reluctance to follow the law. *412 Kang alleges prospective juror Whitcomb presumed police witnesses were more credible than lay witnesses, had a preconceived notion that Kang had done something wrong since he was a defendant, and did not subscribe to the concept of proof beyond a reasonable doubt.
LSA-C.Cr.P. art. 797(2), (4) provides that a defendant may challenge a juror for cause on the following pertinent grounds:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence; [or]
(4) The juror will not accept the law as given to him by the court.
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. However, when a prospective juror has voiced an opinion seemingly prejudicial to the defense, but after further inquiry (frequently referred to as "rehabilitation"), the juror demonstrates the ability and willingness to decide the case impartially according to the law and evidence, a challenge for cause is not warranted.[4]
Prejudice is presumed and a reversal is warranted when a challenge for cause is erroneously denied by the trial court and the defendant has exhausted his peremptory challenges.[5] The trial court is vested with broad discretion in ruling on challenges for cause and its ruling will only be reversed when a review of the voir dire record as a whole reveals an abuse of that discretion.[6] The trial court has great discretion in ruling on cause challenges because it "has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questioning."[7] In the present case, Kang exhausted all 12 of his peremptory challenges and, therefore, he only needs to show that the trial court abused its discretion by denying his challenge for cause.
During voir dire, Mr. Whitcomb stated that his next door neighbor was in charge of the Jefferson Parish Street Crimes Unit and, as a result, he knew some of the deputies in Street Crimes. However, he stated that he had not heard anything about the present case from them. Later, when Mr. Whitcomb was asked whether he could be fair and impartial, given his relationship with people in Street Crimes, Mr. Whitcomb responded, "Weighing testimony equally, I'm going to probably tend to put more weight on the Deputies especially if it's on things they have observed."
Additionally, when Mr. Whitcomb was questioned on the presumption of innocence, the following exchange occurred:
Mr. Whitcomb: I'd have to say he's innocent right now.
. . . .

*413 That's why we're here, so you know, I mean I have to say that whether or not I think that or not; it's what I'd say.
Defense Counsel: Well, do you feel that he must have done something wrong to be here?
Mr. Whitcomb: Probably.
Defense Counsel: Okay. Given that; would you hold that against him?
Mr. Whitcomb: No.
Defense Counsel: Would you in any way, shape or form hold the fact that he's been arrested, against him in this case?
Mr. Whitcomb: No.
Later, Mr. Whitcomb indicated that he had no problem with the State having the burden to prove all the elements of the crime. He was then asked what his verdict would be if he "thought that maybe the Defendant did this." Mr. Whitcomb replied, "Maybe, it would probably be Not Guilty." However, Mr. Whitcomb stated his verdict would be "Not Guilty" if the State failed to prove beyond a reasonable doubt that the crime was not committed in self-defense.
The defense subsequently challenged Mr. Whitcomb for cause based on the fact he would give more credence to police testimony. Thereafter, the trial court questioned Mr. Whitcomb, at which time the following exchange occurred:
Court: Mr. Whitcomb, you were asked a question with regard to whether you would give Deputies more credibility as witnesses than others. The law says that every witnessthat the credibility of each witness must be decided separately, based upon the testimony of that witness. You can't, as a matter of law, give anyone's testimony more weight just because they're Deputies.
Can you, if you sat, abide by that particular legal principle?
Mr. Whitcomb: I don't see how people can honestly say
Court: If you don't think you honestly can, then that
Mr. Whitcomb: I mean, you know, if I have to. You know, you're asking people as if they're trained experts on certain things. So you know, some parts of their testimony, depending on what it is, I'm going to putyou know, I mean if you ask a Deputy if he remembered what somebody was wearing, over somebody else, I'll probably believe him because
Court: If you what?
Mr. Whitcomb: If you ask two eyewitnesses, and one is a Deputy and one is not.
Court: You don't think, because he's trained.
Mr. Whitcomb: Because he is trained and he takes, you know, they're trained on that. I mean, I'm trained on certain things. And you know, I have to put more value on that, I mean honestly, you know. I mean just to say I'm not going toI'm going to disbelieve somebody just because they'reyou know, that's the case. When I'm looking at two statements people make, I have to be honest, you know. You have to
Court: Okay; I understand. Thank you.
The trial court denied Kang's challenge for cause noting there was nothing wrong in giving weight to a deputy's training.
In State v. Baldwin,[8] cited by Kang in his appellant brief, the Louisiana Supreme *414 Court found that the trial court did not err in refusing to excuse a prospective juror for cause even though the prospective juror stated he would favor the testimony of a police officer over that of the defendant because police officers are trained observers. The supreme court noted that the prospective juror was not unqualified to serve as a juror merely because he regarded policemen as trained observers. The supreme court stated that the juror's view of policemen did not imply the juror would accept the police officer's testimony without question.
However, in Baldwin, the prospective juror was rehabilitated by the court through additional questioning. After stating he would favor the testimony of the police officer, the trial court further questioned the prospective juror at which time the prospective juror stated he would give believable testimony from a stranger equal weight with that of a police officer. He further stated he would consider the testimony as a whole. He agreed that policemen could make mistakes and indicated he would not exclude testimony contrary to that of a policeman.
In State v. Anderson,[9] the Second Circuit likewise found no error in the trial court's denial of a challenge for cause where the prospective juror stated his inclination toward giving a police officer's testimony more weight than a civilian witness. In Anderson, the prospective juror stated that while police officers were just like any other witness, their training and experience made a difference. When asked whether the fact an officer had gone through academy training should give the officer's testimony more weight than a non-officer, the prospective juror replied that it would depend on the program. The defense counsel then presented the prospective juror with a hypothetical situation where the police officer had "gone through a very fine, good program." The prospective juror admitted a certain inclination toward giving the officer's testimony in the hypothetical greater weight "given anything to the contrary."
The court in Anderson noted that the prospective juror clearly articulated an understanding that police officers were to be considered just as any other witness but, as in the case of any other witness, a juror was to consider the experience and background of the witness. The court stated the voir dire transcript showed that, although the prospective juror stated he was inclined to give more weight to the testimony of a police officer who was highly trained, the juror explained that he would consider the quality and type of training before weighing the testimony. Thus, the court concluded the prospective juror would not automatically or prejudicially give more weight to the testimony of a police officer to the prejudice of a lay witness testimony merely because a witness was a police officer.
However, in State v. Blank,[10] the First Circuit found reversible error when the trial court refused to excuse two prospective jurors for cause after they stated they would give more weight to the testimony of police officers than a lay person. Both prospective jurors knew people in law enforcement. One of the prospective jurors stated he would probably lean toward law enforcement in weighing the credibility of witnesses but that he "could try" to be fair and impartial despite his relationship with people in law enforcement. *415 Upon further questioning, the prospective juror stated he respected state troopers and could not see them saying something if it was not true. When questioned by the trial court, both prospective jurors agreed that if they believed the testifying police officer was incorrect or not truthful, they would not have a problem "discrediting" the officer's testimony and not accept it as the "Gospel truth."
Despite the trial court's attempt to rehabilitate the two prospective jurors, the Second Circuit determined the responses of the prospective jurors as a whole revealed "facts from which bias, prejudice, or inability to render judgment according to the law may be reasonably inferred."[11] The court noted that both prospective jurors indicated bias toward the testimony of police officers and, thus, concluded that they should have been excused for cause. The court reversed the defendant's conviction and remanded the matter for a new trial.
In the present case, Mr. Whitcomb was not rehabilitated to the same extent as the prospective jurors in Baldwin and Anderson. In fact, further inquiry by the trial court merely elicited an explanation by Mr. Whitcomb as to why he would give more credence to the testimony of a police officer. The closest Mr. Whitcomb came to stating he could determine everyone's credibility separately was his response, "I mean, you know, if I have to." However, he immediately qualified his response by stating he would probably put more value on the testimony of a police officer because of the officer's training. He further explained that his credence in a police officer's testimony is dependent on the subject matter. Mr. Whitcomb stated that he would give more credence to a police officer's testimony pertaining to observation, i.e., what someone was wearing, since the officer is trained on that.
Mr. Whitcomb never unequivocally stated he could evaluate a police officer's testimony the same as any other witness or that he could give another witness' testimony equal weight with that of a police officer. Unlike the prospective jurors in Baldwin and Anderson, Mr. Whitcomb was never questioned regarding the infallibility of police officers. After he stated he would probably believe a police officer over a lay witness because a police officer is trained, Mr. Whitcomb was not questioned, as was the prospective juror in Anderson, about the varying degrees of training a police officer might have and how that would affect the weight he would give their testimony.
Based on the foregoing, we find that the trial court erred in failing to excuse Mr. Whitcomb for cause since he clearly indicated that he would give more weight to the testimony of a police officer than a lay witness. Despite the trial court's attempt to rehabilitate Mr. Whitcomb, he never unequivocally indicated he could disregard his initial bias toward police officers. Mr. Whitcomb's overall responses seem to suggest that he would automatically or prejudicially give more weight to the testimony of a police officer to that of a lay witness merely because a witness was a trained police officer.
Because of this finding, we pretermit discussion on Kang's remaining assignment of error.
For the foregoing reasons, the conviction and sentence of Frank Kang, defendant herein, are reversed and the case is remanded to the trial court for a new trial.
REVERSED AND REMANDED.
NOTES
[1] Co-defendants, James Oh and Duy Hoang, were also charged in the indictment. However, the parties were severed for purposes of trial.
[2] The Jefferson Parish Sheriff's Office knew the victim and Toan Bui to be members of the Trailer Park Crew, an Asian gang.
[3] While Kang was not considered a member or associate of any gang by the Jefferson Parish Sheriff's Office, Duy Hoang was known to be a member of Asian Life, an Asian gang which is known to be very criminally active and violent.
[4] State v. Taylor, 99-296 (La.App. 5 Cir. 7/27/99), 740 So.2d 216, 220, writ denied, 99-2609 (La.3/17/00), 756 So.2d 322.
[5] State v. Anthony, 98-0406 (La.4/11/00), 776 So.2d 376, 391, cert. denied, 531 U.S. 934, 121 S.Ct. 320, 148 L.Ed.2d 258 (2000).
[6] Id.
[7] Id. at 392.
[8] 388 So.2d 664, 671 (La.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981).
[9] 34,670 (La.App. 2 Cir. 5/9/01), 786 So.2d 917, 925-926.
[10] 99-0482 (La.App. 1 Cir. 11/5/99), 745 So.2d 1210, 1215, writ denied, 99-3444 (La.5/12/00), 762 So.2d 12.
[11] State v. Blank, 745 So.2d at 1215.