STATE OF LOUISIANA,
v.
JORDON D. ZANTIZ.
No. 2009 KA 0771.
Court of Appeals of Louisiana, First Circuit.
October 27, 2009.
Not Designated for Publication
KATHRYN LANDRY, WALTER P. REED, District Attorney, Counsel for Appellee State of Louisiana.
JANE L. BEEBE, Counsel for Defendant/Appellant Jordon D. Zantiz.
Before: DOWNING, GAIDRY, and McCLENDON, JJ.
GAIDRY, J.
The defendant, Jordan D. Zantiz, was charged by bill of information with obscenity, a violation of La. R.S. 14:106(A)(1). The defendant pled not guilty. Following a jury trial, was found guilty as charged. He was sentenced to three years at hard labor. The defendant now appeals, designating two assignments of error. We affirm the conviction and sentence.

FACTS
The defendant and his wife, Amy Johnson, who lived in Florida, traveled around in a van as independent contractors for AT&T, delivering telephone books. As they traveled, they lived in the van to save money. On August 21, 2007, they stopped at the Holiday Inn in Covington to use the bathroom and clean up. Before leaving the hotel lobby, Amy began talking to some people she met, and the defendant sat down near the bathroom area with a USA Today newspaper provided free by the hotel.
Brandy McCantz, who worked at the front desk at Holiday Inn, testified at trial. She stated she noticed the defendant sitting near the bathrooms for about 45 minutes holding his newspaper upside down. Brandy needed to use the bathroom. As she walked past the defendant to get to the ladies bathroom, she saw the defendant smiling at her and stroking his erect penis, which was outside of his shorts. The defendant was holding up the newspaper with his other hand. Shocked, Brandy quickly entered the ladies bathroom. She then exited and ran to the front desk. She related what she saw to Emma Brannon, the operations manager, and Donald Julien, the executive chef. Donald told the defendant to leave the hotel, and the police were called. Emma, who also testified at trial, stated that she followed the defendant to his van. She got the license plate number, a description of the van and the defendant, and relayed this information to the police. Brandy also provided a written statement to the police.
Shortly thereafter, the police found the defendant and Amy in a Wal-Mart parking lot in Covington. Corporal Matthew Nelson,[1] with the St. Tammany Parish Sheriffs Office, Mirandized the defendant and informed him about the complaint. The defendant told Corporal Nelson that he was not sure, but he believed his penis may have fallen out of his pants. The defendant was arrested. During the booking process at the police station, Corporal Nelson overheard the defendant state, "I can't help it if my dick falls out of these pants and my pants are made of that fish net type of material. It falls out easy." Amy testified at trial she was near the defendant most of the time when they were in the lobby, and she never saw him masturbate or saw his penis exposed.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues the court erred in denying his challenges for cause of prospective jurors Nancy Wilson and Dorothea Moody. Specifically, the defendant contends that Wilson's childhood experience where someone exposed himself (or herself) to her, and Moody's childhood experience where someone inappropriately touched her, made them uncomfortable and would, therefore, affect their ability to be impartial jurors.
Defense counsel raised cause challenges for Wilson and Moody, but the trial court denied the challenges. Defense counsel objected to the trial court's ruling. Wilson and Moody were peremptorily struck by defense counsel. Thus, neither Wilson nor Moody served on the jury of the defendant's trial.
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const, art. I, § 17(A). The purpose of voir dire examination is to determine prospective jurors' qualifications by testing their competency and impartiality and discovering bases for the intelligent exercise of cause and peremptory challenges. State v. Burton, 464 So.2d 421, 425 (La. App. 1st Cir.), writ denied, 468 So.2d 570 (La. 1985). A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. A trial court is accorded great discretion in determining whether to seat or reject a juror for cause, and such rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. State v. Martin, 558 So.2d 654, 658 (La. App. 1st Cir.), writ denied, 564 So.2d 318 (La. 1990).
A defendant must object at the time of the ruling on the refusal to sustain a challenge for cause of a prospective juror. La. Code Crim. P. art. 800(A). Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges. To prove there has been reversible error warranting reversal of the conviction, defendant need only show (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges. State v. Robertson, 92-2660 (La. 1/14/94), 630 So.2d 1278, 1280-81. It is undisputed that defense counsel exhausted all of his peremptory challenges before the selection of the sixth juror.[2] Therefore, we need only determine the issue of whether the trial judge erred in denying the defendant's cause challenges regarding prospective jurors Wilson and Moody.
Louisiana Code of Criminal Procedure article 797, states in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
* * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
* * * * *
(4) The juror will not accept the law as given to him by the court[.]
The prosecutor in the instant matter asked the prospective jurors to rate, one through ten, their willingness to serve on the jury and their comfort level, with ten being the most willing and the most comfortable. Moody responded seven and four, explaining that this type of case "kind of made her uncomfortable because once, when she was very young, someone grabbed her in "a very private area," and she felt violated. The following colloquy between the prosecutor and Moody then took place:
By Mr. Oubre [prosecutor]: If we kept you you wouldn't hold that against him [defendant] in any way?
By Ms. Moody: No. I would not.
By Mr. Oubre: Would you be fair and impartial?
By Ms. Moody: I would be as fair as I could.
By Mr. Oubre: You would listen to these facts and make your decision based on what you hear from the witness stand?
By Ms. Moody: That is correct.
By Mr. Oubre: Fair as I could, I don't know what you meant?
By Ms. Moody: But it does make me a little uncomfortable.
By Mr. Oubre: I got you. Could you stay if we kept you, if we need you?
By Ms. Moody: I could do it to the best of my ability.
Wilson rated her willingness to serve and comfort level eight and five. The prosecutor asked, "Different comfort reasons, about the same or is it just the charge?" Wilson responded, "Just things that happened in the past."
Shortly thereafter, defense counsel questioned Wilson and Moody about their low comfort levels. Defense counsel asked Wilson, "I think you said you were uncomfortable and you mentioned something, is that something we need to go talk more privately?" Wilson responded, "No." The following colloquy between defense counsel and Wilson then took place:
By Mr. Fontenot [defense counsel]: You said because of something in the past, what would that be?
By Ms. Wilson: Something as a child. Somebody exposed themselves.
By Mr. Fontenot: To you?
By Ms. Wilson: Yes.
By Mr. Fontenot: And I understand that it was not Mr. Zantiz?
By Ms. Wilson: Exactly. True.
By Mr. Fontenot: But the fact that there is that in your memory, do you think that that might make it a little difficult for you to be as completely objective as we really would want a juror to be[?]
By Ms. Wilson: No.
By Mr. Fontenot: Let me just say, I am sure everybody here is going to try their very best to be fair and impartial, I have no doubt of that, but when you walk in a door you bring with you your life experiences and there are some times that you just can't help it. . . . So, I will ask you again, do you think your history might be such that you would be better off on another trial and maybe we would want a more objective juror here or do you think it really wouldn't bother you at all?
By Ms. Wilson: That's a lot of questions rolled into one. I would be uncomfortable but I think I could perform my civic duty as a juror.
By Mr. Fontenot: Okay. Do you think that it would be nagging at you at all that you might be remembering your situation?
By Ms. Wilson: No. I just thought it was something I had to bring up.
Defense counsel then turned his attention to Moody and the following colloquy took place:
By Mr. Fontenot: Okay. Same basic concept?
By Ms. Moody: I just find the subject matter a little uncomfortable. I am not used to discussing that kind of thing. That did happen to me in the past.
By Mr. Fontenot: The same thing then, do you think maybe a different person would be a better person to be on a jury in a case like that.
By Ms. Moody: Possibly. I mean, I just find the subject matter, you know, it is not something I deal with.
By Mr. Fontenot: I think that's true for a lot of us.
By Ms. Moody: That's true.
By Mr. Fontenot: But because of your own personal experience and the fact that you're feeling uncomfortable, you think you would be better with a different type trial than this?
By Ms. Moody: I probably would be and I would do my best to see both sides as fairly as possible, but it is just the subject matter makes me. [sic]
By Mr. Fontenot: You think it might nag at your brain if you were on the jury, you think it would cause you a little bit of a problem?
By Ms. Moody: I wouldn't associate the defendant with what happened to me, but I just thought I should bring that up.
By Mr. Fontenot: For example, if you or a loved one were charged with a crime are you the type of juror you would want them to have?
By Ms. Moody: Probably, yeah.
Later, defense counsel asked the prospective jurors if they wanted to be a member of the jury, based on a ten-point system. A ten indicated the highest desire to serve on the jury. Wilson responded, "Five." Moody responded, "Four."
Defense counsel challenged for cause Wilson and Moody. According to defense counsel, "both of them stated that they felt uncomfortable due to the nature of the charges and might have it in the back of their mind as they deliberate." The prosecutor responded as follows:
I think Jerry asked the ultimate request of both and the ultimate answer was yes, they could be fair. Though they can't run from the fact that they had an experience in their life they would clearly separate that incident from this case and they both said that they could.
In denying the challenges for cause, the trial court stated, "I believe that. I will deny motion for cause but I note your objection."
We agree with the ruling by the trial court. While the jurors indicated they would be somewhat uncomfortable, they demonstrated a willingness and ability to put aside their personal experiences and decide the case impartially according to the law and evidence. Moody indicated she could be fair and would listen to the facts and make her decision based on the testimony. Wilson indicated that her memory of a childhood incident where someone exposed himself (or herself) to her would not affect her ability to be objective. Also, both indicated they would not hold against the defendant his decision not to testify.
While at times Wilson and Moody used less than unequivocal responses like "I think," "possibly" and "probably," we find the voir dire testimony overall establishes that they could be impartial jurors. A prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a trial judge's refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. See State v. Lee, 559 So.2d 1310, 1318 (La. 1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991); State v. Copeland, 530 So.2d 526, 534 (La. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989).
In State v. Rang, 2002-2812, p. 8 (La. 10/21/03), 859 So.2d 649, 655, the defendant argued that the response of "probably" by Mr. Whitcomb, a prospective juror, indicated his unacceptable hesitancy to find the defendant not guilty if the State failed to prove its case beyond a reasonable doubt. The fifth circuit reversed the trial court's denial to strike Mr. Whitcomb for cause, finding that Mr. Whitcomb never unequivocally indicated he could disregard his initial bias toward police officers. State v. Kang, XXXX-XXXX (La. App. 5th Cir. 10/29/02), 831 So.2d 409. The supreme court reversed the fifth circuit and stated:
These conclusions are not supported by the record and demonstrate the court of appeal's failure to give proper deference to the trial court's findings. Mr. Whitcomb's responses during voir dire should be viewed as a whole, not on a piecemeal basis. Though some of Mr. Whitcomb's remarks or references could be viewed as questionable standing alone and out of context, when the voir dire is properly reviewed as a whole, there is no evidence of Mr. Whitcomb's partiality, (citations omitted).
Kang, 2002-2812 at pp. 8-9, 859 So.2d at 655.
The line-drawing in many cases is difficult. Accordingly, the trial judge must determine the challenge on the basis of the entire voir dire, and on the judge's personal observations of the potential jurors during the questioning. Moreover, the reviewing court should accord great deference to the trial judge's determination and should not attempt to reconstruct the voir dire by a microscopic dissection of the transcript in search of magic words or phrases that automatically signify the jurors' qualification or disqualification. See State v. Miller, 99-0192, p. 14 (La. 9/6/00), 776 So.2d 396, 405-06, cert. denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001).
Despite the defendant's assertion that Wilson and Moody could not serve as fair and impartial jurors, the trial court was in the best position to determine whether they could discharge their duties as jurors. Upon reviewing the voir dire in its entirety, we cannot say the trial court abused its discretion in denying defense counsel's cause challenges.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant argues his sentence was excessive. Specifically, the defendant contends that the maximum sentence imposed by the trial court was disproportionate to the instant offense and his history.
The Eighth Amendment to the United States Constitution and Article I, section 20, of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Andrews, 94-0842, pp. 8-9 (La. App. 1st Cir. 5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. See State v. Holts, 525 So.2d 1241, 1245 (La. App. 1st Cir. 1988). Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of La. Code of Crim. P. art. 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. State v. Brown, 2002-2231, p. 4 (La. App. 1st Cir. 5/9/03), 849 So.2d 566, 569.
The articulation of the factual basis for a sentence is the goal of La. Code Crim. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. Code Crim. P. art. 894.1. State v. Lanclos, 419 So.2d 475, 478 (La. 1982). The trial judge should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. See State v. Jones, 398 So.2d 1049, 1051-52 (La. 1981).
In the instant matter, the trial court imposed the maximum sentence of three years at hard labor. See La. R.S. 14:106(G)(1). This court has stated that maximum sentences permitted under statute may be imposed only for the most serious offenses and the worst offenders, or when the offender poses an unusual risk to the public safety due to his past conduct of repeated criminality. State v. Hilton, 99-1239, p. 16 (La. App. 1st Cir. 3/31/00), 764 So.2d 1027, 1037, writ denied, XXXX-XXXX (La. 3/9/01), 786 So.2d 113. The defendant contends the trial court failed to consider any mitigating circumstances.
At sentencing, the trial court stated in pertinent part:
After that verdict the Court had ordered a pre-sentence investigation which I have received and note I relied upon in connection with this sentencing. It contains quite [a] lengthy criminal record of Mr. Zantiz, including prior offenses of the same nature. It appears Mr. Zantiz has a problem in this regard. The following sentence, anything less would deprecate the seriousness of this offense.
According to the presentence investigation report, the Division of Probation and Parole has classified the defendant as a fourth offender. His convictions as an adult over a seventeen-year period in the state of Florida include disorderly conduct, robbery, larceny, trespassing, terroristic threats and acts, armed robbery, burglary, third degree grand theft, and indecent exposure. Further, the defendant's November 25, 2008 pen pack indicated he had approximately 135 disciplinary violations while incarcerated between June 16, 1998 and June 3, 2005. During that period of time, the defendant was cited for multiple violations consisting of obscene profane acts, disobeying orders, and unarmed assaults.
Considering the trial court's careful review of the circumstances, the presentence investigation report, and the nature of the crime, we find no abuse of discretion by the trial court. The trial court's reasons and the presentence investigation report provided ample justification for the imposition of the maximum sentence allowed by law. With his chronic criminal behavior and what appears to be a complete disregard for the law, we find the defendant to be the worst type of offender. See State v. Mickey, 604 So.2d 675, 679 (La. App. 1st Cir. 1992), writ denied, 610 So.2d 795 (La. 1993). We conclude as well, that the trial court did not err in finding that the defendant poses an unusual risk to the public safety due to his past conduct of repeated criminality. See Hilton, 99-1239 at p. 16, 764 So.2d at 1037. Accordingly, the sentence imposed is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive.
This assignment of error is without merit.

REVIEW FOR ERROR
The defendant asks this court to examine the record for error under La. Code Crim. P. art. 920(2). This court routinely reviews the record for such errors, whether or not such a request is made by a defendant. Under La. Code Crim. P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. See State v. Price, 2005-2514 (La. App. 1st Cir. 12/28/06), 952 So.2d 112 (en banc), writ denied, XXXX-XXXX (La. 2/22/08), 976 So.2d 1277.
In reviewing the record, we have discovered that the trial court did not wait the required twenty-four hours before imposing sentence following the denial of the defendant's motions for new trial and postverdict judgment of acquittal. See La. Code Crim. P. art. 873. However, prior to the trial court's imposing sentence, defense counsel stated, "Your Honor, before sentencing, I have filed some post trial motions." After the trial court denied the motions, it asked, "Mr. Zantiz stand ready for sentencing?" Defense counsel replied, "Yes, Your Honor." By suggesting he only wanted a ruling on his motions prior to sentencing, as well as informing the trial court that he was ready for sentencing, defense counsel implicitly waived the waiting period. Moreover, we find no indication that the defendant was prejudiced. Thus, any error which occurred is not reversible. See State v. Steward, 95-1693, p. 23 (La. App. 1st Cir. 9/27/96), 681 So.2d 1007, 1019. See also State v. Lindsey, 583 So.2d 1200, 1205-06 (La. App. 1st Cir. 1991), writ denied, 590 So.2d 588 (La. 1992); State v. Starks, 549 So.2d 409, 413-14 (La. App. 5th Cir. 1989).

DECREE
For the above reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Corporal Nelson was a deputy on the date of the offense.
[2] The crime of obscenity is punishable by imprisonment with or without hard labor. La. R.S. 14:106(G)(1). Cases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors. La. Code Crim. P. art. 782(A). In cases where the offense is not punishable by death or necessarily by imprisonment at hard labor, each defendant shall have six peremptory challenges. See La. Code Crim. P. art. 799.