STATE OF LOUISIANA
v.
DAVID EDWARD CONSTANCE
No. 2008 KA 2585
Court of Appeals of Louisiana, First Circuit.
November 18, 2009
Not Designated for Publication
HON. SCOTT PERRILLOUX, District Attorney, LE'ANNE MALNAR, CHARLOTTE HERBERT PATRICIA PARKER, Assistant District Attorneys Attorneys for State of Louisiana
FRANK SLOAN, Attorney for Defendant-Appellant David Edward Constance
DAVID EDWARD CONSTANCE, Defendant-Appellant, Pro Se.
Before: CARTER, C.J., GUIDRY, and PETTIGREW, JJ.
PETTIGREW, J.
The defendant, David Edward Constance, was charged by grand jury indictment with four counts of aggravated rape, violations of La. R.S. 14:42. The defendant pled not guilty to the charges and, following a jury trial, was found guilty as charged on all counts. He was sentenced on each count to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The sentences were ordered to run consecutively. The defendant now appeals, designating two counseled assignments of error and one pro se assignment of error. For the reasons that follow, we affirm the convictions and sentences.

FACTS
On February 1, 2005, Christina Constance, the defendant's wife, went to the Livingston Parish Sheriffs Office to speak to someone about the defendant. Detective Woody Overton offered to assist Christina. Christina told Detective Overton that the defendant had forced her to sleep with his sixteen-year-old nephew. The defendant had also performed oral sex on her seven-year-old son, and then forced her to also perform oral sex on her son. Based on the police investigation of the matter and several Child Advocacy Center (CAC) interviews of the alleged victims, the State brought four charges, which spanned several years, against the defendant for the aggravated rape of four minors, namely, T.B., a male born on January 18, 1991; J.K., a male born on April 23, 1994; K.F., a male born on October 22, 1989; and J.F., a female born on February 22,1993. Each of the victims testified at trial.
According to the testimony of T.B. and T.B.'s father, the defendant was friends with T.B.'s parents in 2001 when they all lived in Livingston Parish. T.B. testified that at the defendant's trailer in Holden, the defendant asked him if he wanted to have sex with Christina. T.B. said he did not. The defendant called T.B. a "pussy" and other names. The defendant continued to harass T.B. about having sex with Christina to the point where T.B. became frightened of the defendant. The defendant told T.B. to go in the bathroom and take his clothes off. T.B. complied. He then entered the bedroom where the defendant told him to have sex with Christina, who was in the bed. T.B. then had intercourse with Christina. During the intercourse, the defendant was laying next to Christina kissing her.
J.K., his mother, Christina, and the defendant, who was not J.K.'s father, lived together in Holden in 2001. IK. testified at trial that almost every day, from when he was seven to nine years old, the defendant touched J.K.'s "private parts" with his (defendant's) hands and mouth. J.K. stated the defendant put his (J.K.'s) "private" in the defendant's mouth. J.K. further stated the defendant made him touch the defendant's "private" with his hands and mouth. The defendant also made Christina touch J.K.'s "private" with her hands.
K.F. testified at trial the defendant used to live with them. When the defendant moved out, K.F. would visit him on the weekends in Holden, Walker, and Livingston, depending on where he lived. According to K.F., the defendant sucked his penis on several occasions. Also, the defendant tried often to anally rape him, but the defendant failed to enter his anus because K.F. would "tighten up." K.F. further testified the defendant talked him into having sex with Christina. When K.F. was having sex with Christina, she was performing oral sex on the defendant.
J.F. testified that in 2005, she, K.F. (her brother), and M.M. went to the defendant's trailer in Livingston Parish. The defendant took J.F. to the back room, forced her clothes off, and tried to stick his penis in her. J.F. testified that it hurt "[a]ll in my bottom." J.F. also testified that M.M. witnessed the incident.
R.W. testified at trial that the defendant is her half-brother. She stated she did not like the defendant and wished he were dead because he molested her when she was eleven years old. The authorities were notified, and the defendant subsequently pled guilty in October 1991 to attempted indecent behavior with a juvenile.
M.C. testified at trial. She stated she married the defendant when she was eighteen years old and that he was the father of three of her children. When the defendant was eighteen or nineteen years old, he molested her (M.C.) when she was eight or nine years old. The defendant had sex with her when she was twelve years old. At fifteen years old, M.C. ran away with the defendant. The defendant was arrested and subsequently entered a nolo contendere plea in April 1991 to contributing to the delinquency of a juvenile.
M.C. and A.C., the defendant's daughters, were interviewed by Jennifer Thomas, at the CAC in Gonzales, on February 16, 2005. The videotapes of the CAC interviews were submitted into evidence and played for the jury. M.C, who was eleven years old at the time of the interview, told Jennifer that when she was five or six years old, the defendant picked her up to carry her. While he was holding her, he touched her "privates" with his finger. It hurt her and gave her a rash. She told her mother about the incident, which the defendant denied. A.C., who was twelve years old at the time of the interview, told Jennifer that seven or eight times the defendant rubbed her "private" on the inside with his hand. During these incidents, sometimes A.C. was standing, and sometimes she was lying down on a bed.
The defendant did not testify at trial.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant argues the evidence was insufficient to support the count 2 conviction for the aggravated rape of J.F. Specifically, the defendant contends the State failed to establish sexual penetration by the defendant. The defendant does not contest the other three convictions for aggravated rape.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. Code Crim. P. art. 821(B); State v. Ordodi, XXXX-XXXX, p. 10 (La. 11/29/06), 946 So.2d 654, 660. The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 2001-2585, p. 5 (La. App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
Louisiana Revised Statutes 14:42 provides, in pertinent part:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(4) When the victim is under the age of thirteen years.[1] Lack of knowledge of the victim's age shall not be a defense.
(5) When two or more offenders participated in the act.
Louisiana Revised Statutes 14:41 provides, in pertinent part:
A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
Aggravated rape is a general intent crime. State v. McDaniel, 515 So.2d 572, 575 (La. App. 1 Cir. 1987), writ denied, 533 So.2d 10 (La. 1988). General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2). The trier of fact is to determine the requisite intent in a criminal case. State v. Crawford, 619 So.2d 828, 831 (La. App. 1st Cir.), writ denied, 625 So.2d 1032 (La. 1993).
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. State v. Taylor, 97-2261, pp. 5-6 (La. App. 1 Cir. 9/25/98), 721 So.2d 929, 932.
The testimony elicited by J.F., K.F., and M.M. at trial established that in 2005, the defendant picked up IF., K.F., and M.M. in his van and took them to his trailer in Livingston Parish. J.F. testified the defendant took her to the back room and asked her to get undressed. When she refused, the defendant took her clothes off. The defendant then tried to stick his penis in her. J.F. testified that it hurt and that it "felt painful." When asked by the prosecutor where it hurt, J.F. responded, "[a]ll in my bottom." She told the defendant to get off of her, but he did not comply. Instead, he tried "to keep on sticking it in" her. When asked how long this lasted, J.F. responded, "I think all night." J.F. also indicated that M.M. had seen the defendant on top of her (J.F.). M.M. testified that she saw the defendant and J.F. having sex. When asked by the prosecutor what sex was, M.M. responded, "I don't know." When asked what she saw, M.M. explained that she was in the room with the defendant and J.F., and that she saw the defendant on top of J.F., both with their clothes off.
The following morning, the defendant, J.F., K.F., and M.M. all took a shower together. J.F. testified the defendant tried to touch her on her "private." When asked by the prosecutor if he touched her while they were in the shower, J.F. responded, "[n]o, because when he tried to hurt me down there, and I went and used the restroom, I had blood all over." J.F. stated she had blood in her panties.
M.M. was interviewed by Jennifer Thomas at the CAC in Gonzales. The videotape of the CAC interview was submitted into evidence and played for the jury. M.M. told Thomas that she saw the defendant and J.F. having sex. The defendant was on top of J.F. J.F. had her bottoms off and her shirt on. M.M. stated she and K.F. were trying to pull the defendant off of J.F. but could not. J.F. began crying. Later, J.F. went to the bathroom, wiped herself, and noticed "white stuff' on the toilet paper.
The defendant asserts that the circumstantial evidence presented at trial did not exclude the reasonable hypothesis that there was no penetration. The bleeding and pain J.F. experienced, according to the defendant, could have resulted from menstruation or digital penetration. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La. App. 1 dr.), writ denied, 514 So.2d 126 (La. 1987).
The defendant's hypothesis of innocence was that J.F.'s pain and bleeding were caused by menstruation rather than by penile penetration from the defendant or, at most, by digital penetration by the defendant. In finding the defendant guilty of the aggravated rape of J.F., however, it is clear the jury believed the testimony of J.F. and M.M. The jury's unanimous verdict reflected the reasonable conclusion that, based on the trial testimony of J.F., K.F., M.M., and the CAC interview of M.M., the defendant vaginally and/or anally raped J.F., who was 11 years old at the time. See Moten, 510 So.2d at 61. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342, p. 8 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La. App. 1 Cir. 1985).
While there was no physical evidence to prove the rape had occurred, it is not necessary that there be physical evidence to prove the defendant committed aggravated rape. The testimony of the victim alone is sufficient to prove the elements of the offense. State v. Orgeron, 512 So.2d 467, 469 (La. App. 1 Cir. 1987), writ denied, 519 So.2d 113 (La. 1988). The testimonial evidence was sufficient to establish the elements of aggravated rape, specifically the element of penetration. Louisiana Revised Statutes 14:41(B) provides that "[e]mission is not necessary" and that "any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime." See State v. Rives, 407 So.2d 1195, 1197 (La. 1981). Moreover, the abuse of J.F. by the defendant was not realized by authorities until weeks after the incidents. Dr. Scott Benton, an expert in pediatric forensics, testified at trial that it is possible to have vaginal or anal penetration without injury, and that genital trauma heals very rapidly. Dr. Benton further testified that a person can be vaginally, orally, or anally raped and there be no physical evidence.
After a thorough review of the record, we are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the aggravated rape of J.F. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, the defendant argues the court erred in denying his challenge for cause of prospective juror Barbara Montz. Specifically, the defendant contends that because Ms. Montz's nephew had been molested as child, she could not be a fair and impartial juror.
Defense counsel raised a cause challenge for Ms. Montz, but the trial court denied the challenge. Defense counsel objected to the trial court's ruling. Ms. Montz was peremptorily struck by defense counsel. Thus, Ms. Montz did not serve on the jury of the defendant's trial.
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const, art. I, § 17(A). The purpose of voir dire examination is to determine prospective jurors' qualifications by testing their competency and impartiality and discovering bases for the intelligent exercise of cause and peremptory challenges. State v. Burton, 464 So.2d 421, 425 (La. App. 1 Cir.), writ denied, 468 So.2d 570 (La. 1985). A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. A trial court is accorded great discretion in determining whether to seat or reject a juror for cause, and such rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. State v. Martin, 558 So.2d 654, 658 (La. App. 1 Cir.), writ denied, 564 So.2d 318 (La. 1990).
A defendant must object at the time of the ruling on the refusal to sustain a challenge for cause of a prospective juror. La. Code Crim. P. art. 800(A). Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges. To prove there has been reversible error warranting reversal of the conviction, defendant need only show (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges. State v. Robertson, 92-2660 (La. 1/14/94), 630 So.2d 1278, 1280-1281. It is undisputed that defense counsel exhausted all of his peremptory challenges before the selection of the twelfth juror.[2] Therefore, we need only determine the issue of whether the trial judge erred in denying the defendant's cause challenge regarding prospective juror Ms. Montz.
Louisiana Code of Criminal Procedure article 797, states in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
....
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
....
(4) The juror will not accept the law as given to him by the court[.]
Ms. Montz stated she was married and had a 35-year-old son and two granddaughters. The trial court informed the panel as a whole, which included Ms. Montz, that if they were not able to follow the law as the court instructed them, they should raise their hand. The trial court noted for the record that no one raised their hand. The trial court then informed the panel that if they could not accept the law that the defendant is presumed to be innocent until proven guilty, they should raise their hand. The trial court noted for the record that no one raised their hand. The trial court then asked, "Is there any personal business, family or health reason why you could not serve as an impartial juror? If so, please raise your hand." The trial court noted for the record that no one raised a hand.
The prosecutor asked the prospective jurors if any of them had a religious, ethical, or moral concern with the defendant facing life imprisonment if he were to be found guilty. Ms. Montz responded, "If it's proven without a reasonable doubt that he did it I would think he's getting off easy if he just gets life in prison." Later, the prosecutor asked the jurors if their children had been a victim of molestation, incest, or any other sex crime. Ms. Montz responded that her nephew had been a victim. The following colloquy between the prosecutor and Ms. Montz then took place:
By Ms. Malnar [prosecutor]: I know it's hard.
By Ms. Montz: My nephew was twenty something years old and . . . was always getting in trouble when he was younger... so I always loved him even more and took him in and protected him when everybody else might get upset with him, when he'd get in trouble. But, then a few years ago he told us that when he was a child that he was molested by his grandfather on the other side by his dad's daddy. Well he just died a couple years ago, his grandfather that molested him. But anyway he was just in and out of trouble. Well then he got hooked on drugs and he's committed suicide two years ago when, bless his heart he's gone.
By Ms. Malnar: Well look Ms. Montz, do you need a, do you want a Kleenex?
By Ms. Montz: I'm okay.
By Ms. Malnar: Well look I need to ask you a little question to that though. With knowing that and knowing that that happened to him, would that affect whatever you see in this courtroom and would you hold that against that defendant?
By Ms. Montz: Not unless they prove that he's really guilty.
Later, the following colloquy between defense counsel and Ms. Montz took place:
By Mr. Muscarello [defense counsel]: Now, Ms. Montz, I understand that you got a little emotional and I can totally understand that. You seem to have some hard feelings one way or the other and this may be a tough situation for you to be in. Do you feel that you having these kind [sic] of feelings would hinder your ability to sit as a juror in this case?
By Ms. Montz: Well it would be hard to listen to stuff done to anybody like that.
By Mr. Muscarello: I understand.
By Ms. Montz: And I mean I can't say if he did it or not. And you keep asking that question, whether something brought him here. Whether he wants to testify as to what brought him here or not, that's his decision. That's a choice he has, you know.
By Mr. Muscarello: So okay, let's touch on that. You said something brought him here. But, can you look at him and say that he's innocent?
By Ms. Montz: I guess, until they say what brought him here and they prove if it's true or whatever.
By Mr. Muscarello: Right, true or false.
By Ms. Montz: Right.
By Mr. Muscarello: So, what I'm trying to instill in you is that our system says that he's innocent at this point.
By Ms. Montz: Until proven guilty.
By Mr. Muscarello: Right.
By Ms. Montz: Yeah, I understand that.
By Mr. Muscarello: And you know I just, I know that you've had some traumatic experiences, and I just wanted to make sure that that would, may or may not hinder your ability to be a juror in this case.
By Ms. Montz: I don't think so.
At the bench conference, defense counsel challenged Ms. Montz for cause. According to defense counsel, Ms. Montz's "nephew was a victim of a sex crime or molestation. She's openly wept in the court, and to me that in of itself is enough. And she even said I think at one point that she would have a hard time you know with this case." The prosecutor responded, "He asked her that and she rehabilitated herself always saying that we would have to prove beyond a reasonable doubt and that she would keep it out of the courtroom and she could still remain impartial." In denying the cause challenge, the trial court stated:
Yes, the court didn't hear her say she'd have a hard time. I did hear her weep. I did hear her talk about her own personal problems with her nephew or her personal concerns with the nephew who was molested as a child, many years ago. But, I didn't hear anything except that she could be impartial.
We agree with the ruling by the trial court. While it seemed Ms. Montz had strong feelings about her nephew being molested, she demonstrated a willingness and ability to put aside her personal experiences and decide the case impartially according to the law and evidence. When Ms. Montz was asked by the prosecutor if she would hold against the defendant what happened to her nephew, she responded, "[n]ot unless they prove that he's really guilty." In his brief, the defendant suggests that the clear meaning of this statement is that if the State proved he was guilty of a sexual offense against a juvenile, she would hold what happened to her nephew against him. The defendant then asks:
Did she mean that if the State proved [him] guilty of a lesser included offen[s]e on one or more counts that she would vote to convict him on the charge of aggravated rape? Did she mean that if she believed that the State had proven [him] guilty of one of the four counts then she would be prejudiced in favor of convicting him on the other three counts as well? Did she mean that if the [S]tate prove[d] that [he] had previously been guilty of a sexual offense involving a juvenile that she would be prejudiced in favor of convicting [him] on the four counts charged in the indictment in this case?
We find unpersuasive the defendant's suggestion that Ms. Montz could not be impartial because she spoke of not holding anything against the defendant unless he was proven guilty. The aforementioned questions posed by the defendant assume too much. At the very early stages of voir dire, Ms. Montz could not have been aware of other crimes evidence that would be introduced at trial to show the defendant had been convicted of a sexual offense separate and apart from the present charges. Further, she, in all likelihood, would have had no clear understanding of separate counts or lesser and included offenses, or that she would be required to consider lesser and included offenses as a juror. It seems clear that Ms. Montz was suggesting that, if she were to hold anything against the defendant, it would be only after the defendant was found "really guilty," and that such a guilty verdict would be all-inclusive of any charges against the defendant.
The defendant further suggests in his brief that "[w]eeping is a particularly strong response that must not be discounted in favor of equivocal verbal responses to the contrary." While at times Ms. Montz used less than unequivocal responses like "I don't think," and "I guess," we find the voir dire testimony overall establishes she could have sat as an impartial juror. A prospective juror's seemingly prejudicial response is not grounds for an automatic challenge for cause, and a trial judge's refusal to excuse him on the grounds of impartiality is not an abuse of discretion, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. See State v. Lee, 559 So.2d 1310, 1318 (La. 1990), cert. denied, 499 U.S. 954, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991); State v. Copeland, 530 So.2d 526, 534 (La. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989).
In State v. Kang, 2002-2812, p. 8 (La. 10/21/03), 859 So.2d 649, 654-655, the defendant argued that the response of "probably" by Mr. Whitcomb, a prospective juror, indicated his unacceptable hesitancy to find the defendant not guilty if the State failed to prove its case beyond a reasonable doubt. The fifth circuit reversed the trial court's denial to strike Mr. Whitcomb for cause, finding that Mr. Whitcomb never unequivocally indicated he could disregard his initial bias toward police officers. State v. Kang, XXXX-XXXX (La. App. 5th Cir. 10/29/02), 831 So.2d 409. The supreme court reversed the fifth circuit and stated:
These conclusions are not supported by the record and demonstrate the court of appeal's failure to give proper deference to the trial court's findings. Mr. Whitcomb's responses during voir dire should be viewed as a whole, not on a piecemeal basis. Though some of Mr. Whitcomb's remarks or references could be viewed as questionable standing alone and out of context, when the voir dire is properly reviewed as a whole, there is no evidence of Mr. Whitcomb's partiality. [Citations omitted.]
Kang, 2002-2812 at 8-9, 859 So.2d at 655.
The line-drawing in many cases is difficult. Accordingly, the trial judge must determine the challenge on the basis of the entire voir dire, and on the judge's personal observations of the potential jurors during the questioning. Moreover, the reviewing court should accord great deference to the trial judge's determination and should not attempt to reconstruct the voir dire by a microscopic dissection of the transcript in search of magic words or phrases that automatically signify the jurors' qualification or disqualification. See State v. Miller, 99-0192, p. 14 (La. 9/6/00), 776 So.2d 396, 405-406, cert, denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 LEd.2d 111 (2001). Despite the defendant's assertion that Ms. Montz could not be fair and impartial, the trial court was in the best position to determine whether she could discharge her duty as a juror. Upon reviewing the voir dire in its entirety, we cannot say the trial court abused its discretion in denying defense counsel's cause challenge.
This assignment of error is without merit.

PRO SE ASSIGNMENT OF ERROR
In his pro se assignment of error, the defendant argues the admission into evidence of hearsay statements violated his United States and Louisiana constitutional rights. Specifically, the defendant contends that certain statements made at trial by Detective Overton were inadmissible testimonial hearsay under Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
In Crawford, 541 U.S. at 68-69, 124 S.Ct. at 1374, the Supreme Court held that, where testimonial hearsay statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is confrontation. In the instant matter, the defendant's wife, Christina, refused to testify at trial. Detective Overton testified at trial that he initially became involved in the defendant's case when Christina went to the police station and told him about what the defendant had done to her and her child. The defendant argues in his brief that Detective Overton's testimony about what Christina told him about the defendant was inadmissible hearsay violative of his Sixth Amendment right to confrontation since Christina was unavailable to testify. The complained of testimony is the following colloquy between the prosecutor and Detective Overton on redirect examination:
Q. Detective Overton, [defense counsel] mentioned to you about Christina and her implementing [sic] herself. Tell me about that.
A. Actually, Christina was staying with a lady, Kimberly Domaine and Ms. Domaine, you want to know how it came about?
Q. That's correct.
A. Okay. When she was staying with her, Ms. Domaine's son had written her a note saying that David had said it was okay if he had sex with her. She, Christina took the note to Kimberly Domaine and told her about it. And, at that time Kimberly Domaine asked her about it and she told her, it was my husband made me have sex with a sixteen year old boy. And then I think it was 
Q. Who was the sixteen year old boy?
A. I think at that point it was referring to Joe Masion. And then my husband made me perform oral sex on a nine or ten year old girl, which would be [J.F.]. And then they began to talk, Kimberly Domaine 
By Mr. Muscarello [defense counsel]: Judge, I'm going to object to this testimony. It's hearsay.
The Court: Sustained.
Q. Detective Overton you had stated that with Christina, that she was forced to perform oral sex on the child. Tell me about that.
A. That's
By Mr. Muscarello: Objection. Hearsay.
The Court: Overruled. You were talking about a moment ago.
A. The reason I didn't immediately arrest Christina Constance was because her initial statement was that, "He held me by the head of my hair. When I saw him giving my son a blow job and asked what are you doing? He grabbed me by the head of the hair and made me do it." Okay?
Q. Made her do what?
By Mr. Muscarello: Objection, calls for 
The Court: Overruled.
The defendant's argument is baseless because earlier on direct examination, Detective Overton testified without objection as to what Christina told him about the defendant:
Q. And what happened on February 1, 2005?
A. I was asked by one of my secretaries if I had a moment to answer questions or a question for two ladies. I said I did. I brought them into my office and the lady said that she wanted to ask a question or tell something that happened, but she didn't want to get in trouble for it. I told her to go ahead. And, she told me that David Constance had forced her to sleep with his sixteen year old nephew. And then in the same breath she said, and he forced, I saw David perform oral sex on my seven year old son and then he forced me to do it.
Q. And, was there another lady in the room at that time?
A. Yes, there was. Ms. Kimberly Domaine was in there. Christina Constance is the one who made the statement and Kimberly Domaine, the lady she came with was in the room also.
Furthermore, on cross-examination, defense counsel opened the door on the issue of how Detective Overton's initial meeting with Christina led to the defendant's arrest:
Q. Detective Overton.
A. Yes, sir.
Q. You're the lead detective on this case.
A. That's correct.
Q. Tell me about the chain of events. Christina Constance comes to you is that correct?
A. That's correct.
Q. And she implements [sic] herself in these sex crimes?
A. That's correct.
Q. Then you get a search warrant to go to David Constance's house?
A. That's correct.
* * * * *
Q. Why did you arrest David Constance before Christina Constance?
A. Because Christina gave the statement about him giving oral sex to the seven year old boy that she witnessed.
Q. Didn't she implement [sic] herself as well?
A. That's correct.
Q. But, you didn't arrest her?
A. I was planning on it. I wanted to see what your client had to say about the matter.
Thus, by the time defense counsel lodged an objection to Detective Overton's testimony on redirect about what Christina told him, the State had already elicited the same testimony from Detective Overton on direct examination without objection. Moreover, defense counsel opened wide the door on the issue when he asked Detective Overton to "tell [him] about the chain of events." Where defense counsel went on cross-examination, the State had the right to follow on redirect. State v. Overton, 337 So.2d 1201, 1206 (La. 1976). See State v. Winfrey, 97-427, p. 26 (La. App. 5 Cir. 10/28/97), 703 So.2d 63, 78, writ denied, 98-0264 (La. 6/19/98), 719 So.2d 481; State v. Moseley, 587 So.2d 46, 55-56 (La. App. 2 Cir.), writ denied, 589 So.2d 1066 (La. 1991). Accordingly, the defendant cannot now be heard to complain of the admission of inadmissible hearsay during the redirect examination of Detective Overton.
Even assuming, arguendo, that Detective Overton's testimony regarding what Christina told him about the defendant constituted hearsay, given the trial testimony of each of the four minor victims, the trial testimony of M.M., and the CAC interview of M.M. admitted into evidence and played for the jury, such testimony by Detective Overton was cumulative and corroborative of other testimony establishing the defendant's guilt. Inadmissible hearsay that is merely cumulative or corroborative of other testimony adduced at trial is considered harmless. State v. Spell, 399 So.2d 551, 556 (La. 1981). Therefore, even if erroneous, its admission into evidence would have been harmless beyond a reasonable doubt. See La. Code Crim. P. art. 921; Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); State v. Hilton, 99-1239, pp. 11-12 (La. App. 1 Cir. 3/31/00), 764 So.2d 1027, 1035, writ denied, XXXX-XXXX (La. 3/9/01), 786 So.2d 113; State v. Byrd, 540 So.2d 1110, 1114 (La. App. 1 Cir.), writ denied, 546 So.2d 169 (La. 1989). See also Crawford, 541 U.S. at 76, 124 S.Ct. at 1378 (Rehnquist, C J., concurring).
The pro se assignment of error is without merit.
CONVICTIONS AND SENTENCES AFFIRMED.
GUIDRY, J., dissents and assigns reasons.
GUIDRY, J., dissenting.
I respectfully disagree with the majority's determination that the trial court did not abuse its discretion in denying the defendant's challenge for cause of prospective juror Barbara Montz.
Montz openly wept during voir dire when discussing her nephew, to whom she was particularly close. According to Montz, her nephew was molested as a child, thereafter had a troubled childhood, and subsequently committed suicide two years prior to the defendant's trial. She also gave equivocal responses to questions regarding her ability to render an impartial verdict. Montz seemed particularly biased against the defendant accused of rape when she stated, "If it's proven without a reasonable doubt that he did it I would think he's getting off easy if he just gets life in prison."
While arguably none of these statements or actions alone would be sufficient to dismiss Montz for cause, a review of the voir dire in its entirety indicates Montz could not be a fair and impartial juror. Her responses and behavior as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law was reasonably implied. Accordingly, I disagree with the majority's determination that the trial court did not abuse its discretion in failing to dismiss Montz for cause.
NOTES
[1] This was the applicable law in 2005, as it pertains to count 2 of aggravated rape, which the indictment indicates occurred in 2005. In 2001 and 2002, the applicable law as it pertains to counts 1, 3, and 4 provided that it was aggravated rape when the victim was under the age of twelve years.
[2] The crime of aggravated rape is punishable by life imprisonment at hard labor. La. R.S. 14:42(D)(1). Cases in which the punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. La. Code Crim. P. art. 782(A). In trials of offenses punishable necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges. See La. Code Crim. P. art. 799.